Sheila Karon HORTON, Appellant,

v.

John D. HORTON, Appellee.

No. 18526.

Court of Appeals of Texas,
Fort Worth.

Nov. 19, 1981.

Rehearing Denied Dec. 17, 1981.

Anderson, Anderson & Rodriguez and Rosendo Rodriguez, Jr., Wichita Falls, for appellant.

William V. Browning, Wichita Falls, for appellee.

Before MASSEY, C. J., and SPURLOCK and HOLMAN, JJ.

OPINION

MASSEY, Chief Justice.

This is an appeal from an award changing child custody. The father received managing conservatorship of his four-year-old son, which earlier in the original divorce decree had been reposited in the mother.

We affirm.

Sheila Karon Horton and John Daniel Horton, parents of Joe Daniel Horton, were divorced on May 27, 1977. By the decree, custody of their minor child was awarded to the mother; the father was made possessory conservator and was given visitation privileges and responsibility to make child support payments.

Procedurally a number of events occurred thereafter, although factually the child remained either in the care of his mother, or, through her arrangements, with his maternal grandmother and stepgrandfather. Visits with his father continued to be enjoyed by the child.

On October 24, 1978, the mother filed a motion to modify. She alleged that circumstances had so materially changed since May 27, 1977, that her retention as managing conservator would be injurious to the welfare of the child. She further alleged that appointment of the maternal grandmother and step-grandfather in her place and stead would be a positive improvement for the child. Request was made for their appointment with the mother made co-possessory conservator with the father.

The father filed a waiver concerning this particular action in which he agreed to whatever the court might do, without further notice to him. The court granted the request filed October 24, 1978, and entered a modification order in accord on November 22, 1978. Promptly thereafter, however, the court granted the mother's December 4, 1978, motion for new trial. She alleged that she had been duped. After having granted new trial on January 8, 1979, the court granted the mother's December 4, 1978, motion for voluntary non-suit, such order's date being January 8, 1979.

The court subsequently entered another order on December 19, 1979, reading in full as follows:

"By virtue of the fact that the Motion for Modification in the above styled and numbered cause has been dismissed by the moving party taking a non-suit, the previous order of the Court appointing Sheila Karen Horton as managing conservator of Joe Daniel Horton is hereby reinstated and the District Clerk is hereby directed to forward all child support payments to Sheila Karen Horton as managing conservator.

"SIGNED AND ENTERED this 19th day of December, 1979."

The next action in the trial court concerning the custody of this child was a motion to modify filed by the father on July 22, 1980. This motion was heard on October 17, 1980, at which time the father was named managing conservator of the child in the place and stead of the mother. The mother appealed this action, including subsequent denial of her motion for new trial, raising three points of error: (1) a violation of her constitutional rights due to the fact that through no fault of her own she was not represented by counsel at the October 17 hearing; (2) charge of inadequacy of the motion and evidence presented thereto since it failed to contain an affidavit as required by the Texas Family Code; and (3) an insufficiency of evidence to support the trial court's judgment transferring custody.

■ This court does not reach constitutional issues if the matter can be resolved on another basis. We are able to do this, though we do at a later time discuss the complaint.

Tex. Family Code Ann. sec. 14.08 (1980–1981) "Modification of Order", governs the method of obtaining review of child custody awards. Subsection (d) applies if the motion to modify is filed within one year from the "date of issuance of the order or decree to be modified" and requires the filing of an affidavit containing supporting facts to show one of two allegations, (a) that the child's present environment may endanger his physical health or emotional development or (b) that the present managing conservator seeks or consents to the modification. Subsection (e) authorizes the trial court to set a hearing only if it determines on the basis of the affidavit that adequate facts support the required allegation. This statute has been held to mean that a motion to modify filed within a year from the last order entered must be supported by an affidavit. *Hill v. Hill*, 599 S.W.2d 691 (Tex.Civ. App.—Austin 1980, no writ), *DeLeon v. Periman*, 530 S.W.2d 174 (Tex.Civ.App.—Amarillo 1975, no writ).

■ For purposes of the timetable for the filing of a motion for modification of a child custody order, we deem the order of December 19, 1979 (quoted above) to be a

nullity, i.e., as without force and effect. This is because the original decree of May 27, 1977, for lack of finality of the order of October 24, 1978, was never actually changed. The order of December 19, 1979, could not have reinstated an order already in effect though it might purport to do so. The motion for voluntary non-suit granted on January 8, 1979, made that case and the initial provision of the order therein transferring custody to the maternal grandmother and step-grandfather a nullity, i.e., as though the case had never been filed. Specifically, therefore, there was not a necessity by subsection (d) of sec. 14.08 to attach the affidavit which is required when suit is filed to change custody within one year of the custody order desired to be changed.

■ Error is also alleged to have been committed by the trial court in its transfer of managing conservatorship (change of custody) due to insufficiency of the evidence. The court heard the testimony of both parents, the child's step-mother (father's second wife), the maternal grandmother and step-grandfather with whom the child had spent a considerable amount of time, the paternal grandmother, and the district clerk.

The evidence shows that since the time of the original decree the mother has established what she considers to be a common-law marriage (she knows the man is presently married to another woman) and that she and the child have lived in at least three states in as many years. She testified that she knew that the child has a speech problem, that the child had spent three weeks in special speech therapy classes the summer prior to the hearing, and that he was then enrolled in an early childhood program. Other witnesses testified that the mother had stated on numerous prior occasions that she would see that the child received special assistance with his speech problems, but that not until about the same time she was notified of the father's motion to modify did she actually take any action in this regard. Both the father and the step-mother testified to their willingness and ability to provide the child with speech therapy.

Of the witnesses who testified, only the mother had first-hand knowledge of the environment she had been providing for the child, and she felt that it was a proper environment and that the child was happy living with her.

The evidence shows that the father has remarried, and he and his present wife live in the same community as the child's grandparents. They testified concerning the environment they could provide. The grandmothers and the step-grandfather testified they believed the child would be in better circumstances residing with his father than would be existent were he to continue in the custody of his mother.

The evidence is sufficient to enable the trial court to hold that changed circumstances have occurred since the divorce decree in 1977. The trial court, in its discretion, could properly determine that the best interests of the child authorized transfer of custody to the father, and the order in accord was not an abuse of discretion.

■ The mother also contends that the trial court erred in refusing to grant a continuance so that she could be represented by counsel of her choice at the hearing, such error amounting to the denial of due process. The facts concerning the hearing are: the motion to modify was filed on July 22, 1980, and the hearing at that time was set for September 26, 1980. The mother was served notice on August 4, 1980. The mother's counsel, Mr. Charles Erwin, then filed an answer and a motion to transfer. Due to error in the papers served the mother, her attorney, and Mr. Gould (her "common law husband"), traveled to Montague a couple of days prior to the September 26 hearing. At that time the mistake was discovered and, because the mother's counsel had a conflicting court setting, the hearing was reset to October 10. On October 10 the court ruled against the motion to transfer and at that time was ready to proceed with the hearing on the motion to modify. However, in order to accommodate the mother, another continuance was granted and the motion to modify was rescheduled, this time on October 17.

On October 10 the mother notified attorney Erwin of witnesses in Richardson whom she believed would be favorable to her side of the case. (These were primarily workers in the early childhood and speech therapy programs in the school district where the mother had arranged training for the child.) Between October 10 and 17, both appellant and Mr. Gould tried repeatedly to contact attorney Erwin. Late on the night of the 16th, after the mother had gone to bed, Mr. Gould succeeded in reaching the attorney by telephone. By this communication Gould was informed that no witnesses had been contacted or subpoenaed for the hearing scheduled the following morning. Gould then fired Mr. Erwin as the mother's counsel, an act of which the mother learned the next morning. She attempted to refuse to ratify the discharge of Erwin as her attorney and notified the judge in Montague County, who informed her that she was still expected to be present for the hearing at 9:00 a. m. After arriving at the courthouse, she attempted to hire other attorneys but was unsuccessful. The judge ordered trial to proceed. At the hearing Gould was placed under the rule and thus, according to her complaint ɔn appeal, she was alone and without counsel.

Although this situation may not have resulted from the mother's choice, it did not amount to a denial of due process. She was free to proceed either with or without an attorney. Indeed, had she chosen, she could also have elected to proceed without counsel in all phases of the modification suit. The trial court was concerned that the matter be heard properly (and the court rescheduled trial a total of three times, two of these delays at the mother's request). The court did not err in hearing the case in these circumstances.

Judgment is affirmed.