676 S.W.2d 632 (1984)
WILLACY COUNTY APPRAISAL DISTRICT, and Willacy County Appraisal District Board of Review, Appellants,
v.
NORTH ALAMO WATER SUPPLY CORPORATION, and Jim Mattox, Attorney General of the State of Texas, Appellees.
No. 13-83-318-CV.
Court of Appeals of Texas, Corpus Christi.
June 28, 1984.
Rehearings Denied August 31, 1984.
*633 Russell R. Graham, Austin, for appellants.
Jerome D. Bitting, Johnston, Bishop & Bitting, Jim Mattox, Atty. Gen., Bill Kimbrough, Asst. Atty. Gen., Austin, for appellees.
Before NYE, C.J., and UTTER and YOUNG, JJ.

OPINION
UTTER, Justice.
This case was originally filed by appellee, North Alamo Water Supply Corporation (North Alamo), in the 107th District Court of Willacy County, seeking a judicial review of a decision made by the Willacy County Appraisal District Board of Review (Appraisal District) which denied North Alamo's application for exemption from ad valorem taxation of North Alamo's buildings and tangible personal property. Appellee North Alamo claimed exemption for such properties under the provisions of TEX.PROP.TAX CODE ANN. § 11.18 *634 (Vernon Supp.1984) as a "charitable organization." Appellants filed their original answer and cross-petition for declaratory judgment in which they alleged that § 11.18 was unconstitutional to the extent that it exceeded constitutional authority by creating an exemption from ad valorem taxation for properties of an organization simply because such organization was a non-profit organization which was engaged in "acquiring, storing, transporting, selling or distributing water for public use." As required by TEX.REV.CIV.STAT.ANN. art. 2524-1 § 11 (Vernon Supp.1984), appellants named the Attorney General of the State of Texas as a party defendant to appellants' petition for declaratory judgment. The Attorney General subsequently filed a petition in intervention and participated in the case below. The case was tried before the court, and judgment was entered for appellee North Alamo holding that its property was exempt from ad valorem taxation under the provisions of § 11.18 of the Texas Property Tax Code and awarding appellee attorney's fees. The trial court declined to rule on appellants' cross-petition for declaratory judgment.
TEX. CONST. Art. VIII, Sec. 2, provides the authority under which the Legislature may, by general laws, exempt from ad valorem taxation certain property which would otherwise be subject to ad valorem taxation under TEX. CONST. Art. VIII, Sec. 1. TEX. CONST. Art. VIII, Sec. 2, provides in pertinent part:
§ 2. Occupation taxes; equality and uniformity; exemptions from taxations
Sec. 2(a) All occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax; but the legislature may, by general laws, exempt from taxation public property used for public purposes; ... and institutions of purely public charity; and all laws exempting property from taxation other than the property mentioned in this Section shall be null and void. (emphasis supplied)
Pursuant to the constitutional authority to grant certain exemptions from ad valorem taxation in TEX. CONST. Art. VIII, Sec. 2, the Texas Legislature recently enacted TEX.PROP. TAX CODE ANN. § 11.18 (Vernon Supp.1984), which provides:
§ 11.18. Charitable Organizations
(a) An organization that qualifies as a charitable organization as provided by Subsection (c) of this section is entitled to an exemption from taxation of the buildings and tangible personal property that:
(1) are owned by the charitable organization; and
(2) except as permitted by subsection (b) of this section are used exclusively by qualified charitable organizations.
* * * * * *
(c) To qualify as a charitable organization for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:
(1) be organized exclusively to perform religious, charitable, scientific, literary, or educational purposes and, except as permitted by subsection
(d) of this section, engaged exclusively in performing one or more of the following charitable functions:
* * * * * *
(G) acquiring, storing, transporting, selling, or distributing water for public use;

* * * * * *
(2) be operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowed for salary or other compensation for services rendered, or realization of any other form of private gain and, if the organization performs one or more of the charitable functions specified by Paragraph (C), (D), (E), (F), (G), (J), (K), (M), or (N) of Subdivision (1) of this subsection, be organized as a nonprofit corporation as *635 defined by the Texas Non-Profit Corporation Act; and
(3) by charter, by-law, or other regulation adopted by the organization to govern its affairs:

(a) pledge its assets for use in performing the organization's charitable functions; and

(b) direct that on discontinuance of the organization by dissolution or otherwise the assets are to be transferred to this State or to an educational, religious, charitable, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended. (emphasis supplied)
TEX.PROP.TAX CODE ANN. § 11.18 (Vernon Supp.1984) superceded TEX.REV. CIV.STAT.ANN. art. 7150 (Vernon Supp. 1984) which, before its repeal, included the following pertinent provisions:
Art. 7150. Exemption from Taxation.
The following property shall be exempt from taxation, to-wit:
* * * * * *
Sec. 23. Non-Profit Water Supply Corporations.All real and personal property owned by a nonprofit water supply corporation which is reasonably necessary for, and is used in, the operation of the corporation in theacquisition, storage, transportation, sale and distribution of water is exempt from taxation. (emphasis supplied)
It is uncontested that North Alamo is a non-profit water supply corporation which was organized and has been operated pursuant to TEX.REV.CIV.STAT.ANN. art. 1434a (Vernon Supp.1984). As such, North Alamo is regulated as a public utility by the Public Utility Commission (PUC) pursuant to TEX.REV.CIV.STAT.ANN. art. 1446a (Vernon Supp.1984). Furthermore, North Alamo, as organized and operated, is engaged exclusively "acquiring, storing, transporting, selling, or distributing water" to the members of the corporation. As a prerequisite to obtaining service from North Alamo, a person wanting service must be a member of the corporation. When memberships were available to the public, formal application and the payment of a $100.00 membership fee were required. At the time of trial, memberships were not then available, and the memberships were considered to be private property of the members which could be sold by the members, subject to the corporate board's approval. All members were expected to pay for any service received, and any member who failed to pay for service after two notices would have their service discontinued, and, if after an additional ninety days and a subsequent notice the member did not pay for his service, his membership would be terminated. North Alamo has had no provisions to provide service for any member or non-member who has a need for service and has indicated an inability to pay for such service, nor does their PUC-mandated tariff schedule, which North Alamo is obligated to follow as a public utility, so provide.
In appellants' first through third and seventh points of error, appellants contend that the evidence is factually insufficient to support the findings of fact which were necessary to provide the basis for the trial court's judgment that appellees qualified for the tax exemption under § 11.18 of the Texas Property Tax Code.
In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in Glover v. Texas General Indemnity Company, 619 S.W.2d 400 (Tex.1981); Garza v. Alviar, 395 S.W.2d 821 (Tex.1965); Allied Finance Company v. Garza, 626 S.W.2d 120 (Tex.App.Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, No Evidence and Insufficient Evidence Points of Error, 38 Tex.L.Rev. 361 (1960).
The burden to establish the requirements for exemption from taxation is on the institution claiming the exemption, and the exemption must be proved in such a manner as to leave no doubt. In such cases, exemptions from taxation are never favored, and, in construing laws exempting *636 an organization, all doubts must be resolved against the institution claiming the exemption. Hedgecroft v. City of Houston, 150 Tex. 654, 244 S.W.2d 632 (1951); Davies v. Meyer, 528 S.W.2d 864 (Tex.Civ. App.Fort Worth 1975, aff'd. 541 S.W.2d 827 (Tex.1976)); Aransas Hospital, Inc. v. Aransas Pass Independent School District, 521 S.W.2d 685 (Tex.Civ.App.Corpus Christi 1975, writ ref'd. n.r.e.); Methodist River Oaks Apartments, Inc. v. City of Waco, 409 S.W.2d 485 (Tex.Civ.App. Waco 1966, writ ref'd. n.r.e., cert denied, 389 U.S. 848, 88 S.Ct. 75, 19 L.Ed.2d 117 (1967)). Both statutory and constitutional provisions purporting to grant exemption from taxation will be given a narrow and strict construction, and all doubts must be resolved against the granting of the tax exemption. Hilltop Village v. Kerrville Independent School District, 426 S.W.2d 943 (Tex.1968); Davies v. Meyer, 528 S.W.2d 864 (Tex.Civ.App.Fort Worth 1975, aff'd., 541 S.W.2d 827 (Tex.1976)); City of Houston v. South Park Baptist Church of Houston, 393 S.W.2d 354 (Tex. Civ.App.Houston 1965, writ ref'd.); Radio Bible Hour, Inc. v. Hurst-Euless Independent School District, 341 S.W.2d 467 (Tex.Civ.App.Fort Worth 1960, writ ref'd. n.r.e.).
Appellants' first contention is that the trial court erred in rendering judgment for appellee North Alamo in that said judgment is dependent on the trial court's finding that appellee was a non-profit corporation engaged exclusively in acquiring, storing, transporting, selling or distributing water for public use, which finding goes against the great weight and preponderance of the evidence (See § 11.18(c)(1)(G)). Appellants neither contend that North Alamo is not a non-profit corporation nor that North Alamo is not organized and engaged exclusively in acquiring, storing, transporting, selling or distributing water; rather, their contention is that North Alamo is not acquiring, storing, transporting, selling or distributing water for public use. Appellants point out that the testimony at trial clearly shows (1) that the water service provided by North Alamo is available solely to the members of the corporation; (2) that, in order to receive service from North Alamo, it was an absolute prerequisite that one become a member of the corporation; (3) that one who does not or cannot pay for the water service might have their service terminated and their membership dissolved; (4) that there are no provisions for members of the public who have a need for such water service and who cannot pay; and, (5) that, at the time of trial, memberships were not available to the public at large and were considered private property. With these facts in mind, appellants argue that the water service provided by North Alamo was not "for public use."
As stated in Article IV of North Alamo's by-laws, "the corporation is formed for the purpose of furnishing a water supply for general farm use and domestic purposes to individuals residing in the rural community of North Alamo, Texas and the surrounding rural areas." In determining whether an organization is charitable in nature, one must look beyond the organization's stated goals, as those may be set forth in its charter, articles of incorporation or by-laws, to its actual method of operation. Hilltop Village, Inc. v. Kerrville Independent School District, 426 S.W.2d 943 (Tex.1968). In Hilltop Village, Inc. v. Kerrville Independent School District, the Texas Supreme Court held as follows:
To qualify under these constitutional and statutory requirements, an institution must be one of purely public charity in the purposes for which it is formed and in the manner and means it has adopted for the accomplishment of such purposes; this being so, and in addition, the properties which are the subject of the claimed exemption must be owned and used exclusively by the institution in furthering its charitable activities. Briefly stated, there must be a dedication of the properties to charitable uses accompanied by actual uses for such purposes.
Hilltop Village, Inc. v. Kerrville Independent School District, 426 S.W.2d at 946-947. Even though the record does not disclose *637 the extent of North Alamo's operations, it is clear that North Alamo dedicated its properties exclusively to "acquiring, storing, transporting, selling or distributing water" pursuant to TEX.REV.CIV. STAT.ANN. art. 1434a (Vernon Supp.1984).
In a similar situation, the Attorney General for the State of Texas concluded that a water supply corporation created under TEX.REV.CIV.STAT.ANN. art. 1434a established a "drinking water supply ... for public use" within the meaning of TEX. REV.CIV.STAT.ANN. art. 4477-1. (Op. Atty.Gen. No. M-1242 (1972).)
Furthermore, North Alamo is a "public utility," as defined by TEX.REV. CIV.STAT.ANN. art. 1446c § 3(c)(3) (Vernon Supp.1984), and, as such, it is subject to the regulation of the Public Utility Commission. Art. 1446c. As a public utility and a holder of a certificate of public convenience and necessity, North Alamo must comply with the provisions of Art. 1446c § 58 which provides:
Sec. 58. (a) The holder of any certificate of public convenience and necessity shall serve every consumer within its certified area and shall render continuous and adequate service within the area or areas.
(b) Unless the commission issues a certificate that neither the present or future convenience and necessity will be adversely affected, the holder of a certificate shall not discontinue, reduce, or impair service to a certified service area or part thereof except for:
(1) nonpayment of charges;
(2) nonuse; or,
(3) other similar reasons in the usual course of business.
(c) Any discontinuance, reduction, or impairment of the service, whether with or without the approval of the commission, shall be in conformity with and subject to such conditions, restrictions, and limitations as the commission shall prescribe.
Since North Alamo is a non-profit water supply corporation organized under Art. 1434a to supply water to its members and since, pursuant to Art. 1446c, North Alamo shall serve "every consumer within its certified area and shall render continuous and adequate service within the area or areas" and "shall not discontinue, reduce, or impair service to certified service area or part thereof," except for certain limited exceptions, we hold that the evidence is sufficient to support the trial court's finding that North Alamo provides water for "public use." Appellants' first contention is without merit.
In their second contention, appellants assert that the trial court erred in rendering judgment for North Alamo in that the judgment was dependent on the trial court's finding that appellee has been and is being operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from the payment of compensation in excess of reasonable allowance for salary or other compensation for services rendered, or realization of any other form or private gain, which finding goes against the great weight and preponderance of the evidence (See § 11.18(c)(2)). Appellants point out certain testimony which clearly shows the realization of private gain by some members of appellee corporation: The corporation's manager testified that, when memberships were sold by the corporation, they cost $100.00. The corporation's manager further testified as follows:
Q. Can a current member sell his membership?
A. A membership incorporation is private property that we lose some control over, and yes, they can be sold.
Q. To your knowledge are any of these memberships sold from one individual to another?
A. Yes, some are being transacted.
Q. And how much are they being sold for at the current time?
A. I have known ofto my personal knowledge, I know of some of them to have gone for a thousand dollars or better. I have heard of prices of *638 being asked higher than that. I don't know of any transactions.
Q. So they're [sic] apparently are some members who have made as much as 900 percent profit on the sale of their membership?
A. Yes, this is correct.
Q. Do many members buy more than one membership at a time?
A. Other than developers that are required whenand here, the developers can only obtain the memberships during times when they get adequate water. They are required to acquire memberships for one-half the lots on a subdivision when its [sic] approved for water.
Q. Okay, so if a developer had a subdivision that was going to contain eventually 300 lots, he would have to buy 150 memberships
A. That's correct.
Q. to initiate service. Since these memberships are limited, is this the type of situation where you're seeing memberships sold at a premium?
A. It's only during times when we don't have an adequate supply of water that memberships go to the premium, yes.
Appellants argue that a 900 percent profit resulting from the sale of memberships in the corporation is in contravention of the statutory requirement (§ 11.18(c)(2)) prohibiting "the realization of any other form of private gain."
As above stated, laws governing tax exemptions must be interpreted in their narrowest and strictest sense, and all doubts must be resolved against the granting of the exemption. Here, the statute requires that there be no "realization of any other form of private gain." This proscription is not limited in any way. If the by-laws of North Alamo had required that the members sell or transfer the shares at cost or that the membership fee not be recouped, the members would not have realized any profit or gain in the form of the premiums received upon the sale of the memberships as private property. By allowing its members to sell their memberships at a premium, the corporation allowed the realization of a form of private gain by its members in contravention of a narrow and strict construction of the statutory language. We sustain appellants' second contention.
In their third contention, appellants assert that the trial court erred in rendering judgment for North Alamo in that the judgment was dependent on the trial court's finding that, by by-law provision, North Alamo has directed that, upon discontinuance of the organization by dissolution or otherwise, the assets are to be transferred to a charitable organization in the State of Texas which is organized to acquire, store, transport, sell or distribute water for public use, which finding goes against the great weight and preponderance of the evidence (See § 11.18(c)(3)(B)). The relevant portion of § 11.18 of the Texas Property Tax Code reads as follows:
(c) To qualify as a charitable organization for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:
(3) by charter, bylaw, or other regulation adopted by the organization to govern its affairs:
(B) direct that on discontinuance of the organization by dissolution or otherwise the assets are to be transferred to this State or to an educational, religious, charitable, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended.
Article XV of North Alamo's by-laws reads as follows:
Upon the discontinuance of the Corporation by dissolution or otherwise, all assets of the Corporation remaining after payment of the indebtedness of the Corporation shall be distributed among the members and former members in direct proportion to the amount of their patronage with the Corporation insofar as practicable. Any indebtedness due *639 the Corporation by a member for water service or otherwise shall be deducted from such member's share prior to final distribution. By application for and acceptance of membership in the Corporation, each member agrees that, upon such discontinuance of service by dissolution or otherwise, the assets transferred to that member shall be, in turn, immediately transferred by the individual member to a charitable organization in the State of Texas, selected by a majority of the members voting, which is organized to acquire, store, transport, sell or distribute water for public use and further is qualified for an exemption authorized by chapter 11 of the Property Tax Code of the State of Texas.
Appellants argue that the by-law provisions provide for two separate and distinct transfers of the assets upon corporate dissolution or discontinuance; whereas, under the statute, only one transfer was obviously contemplated. Furthermore, the appellant argues that the by-law provisions do not require that the assets be transferred to an organization that is qualified as a charitable organization under Sec. 501(c)(3), Internal Revenue Code of 1954, as amended.
As stated above, laws governing exemptions must be interpreted in their narrowest and strictest sense, and all doubts must be resolved against the granting of the exemption. In accordance with a narrow and strict construction, the statutory provision requires a direct transfer of the assets upon dissolution or discontinuance; the corporation's by-law provisions provide that, upon discontinuance of the corporation by dissolution or otherwise, all assets of the corporation remaining are to be transferred by a two-stage, indirect (and not direct) transfer.
Furthermore, the statutory provision (§ 11.18(c)(3)(B)) provides that the transfer be made to the State or to an educational, religious, charitable, or other similar organization as qualified as a charitable organization under Sec. 501(c)(3), Internal Revenue Code of 1954, as amended; however, the corporation's by-law provisions provide that, upon the discontinuance of the corporation by dissolution or otherwise, all assets of the corporation remaining are to be transferred to a charitable organization organized to acquire, store, transport, sell or distribute water for public use which is qualified for an exemption authorized by Chapter 11 of the Texas Property Tax Code. Sec. 501 of the Internal Revenue Code of 1954, as amended, in pertinent part, provides:
Section 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUST, ETC.
(a) Exemption From Taxation.An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.
* * * * * *
(c) List of Exempt Organizations. The following organizations are referred to in subsection (a):
* * * * * *
(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amatuer sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or the prevention of cruelty to children or animals, no part of the net earning of which insures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.
* * * * * *

*640 (12)(A) Benevolent life insurance associations of a purely local character, mutual ditch or irrigation companies, mutual or cooperative telephone companies, or like organizations; but only if 85 percent or more of the income consists of amounts collected from members for the sole purpose of meeting losses or expenses.
It is obvious that a "charitable organization," which is organized to acquire, store, transport, sell or distribute water for public use and which is further qualified for an exemption authorized by Chapter 11 of the Texas Property Tax Code, does not qualify as a charitable organization under Sec. 501(c)(3) but does qualify as an organization entitled to exemption from federal income tax under Sec. 501(c)(12)(A), Internal Revenue Code of 1954, as amended. See Rev.Rul. 67-265, (1967). Therefore, North Alamo's by-law provisions do not comply with the requirements of § 11.18(c)(3)(B) of the Texas Property Tax. Code. We sustain appellants' third contention.
In their fourth contention, appellants assert that the trial court erred in rendering judgment for North Alamo in that the judgment was based on the trial court's conclusion of law that all of the buildings and tangible personal property of North Alamo situated in Willacy County were exempt from ad valorem taxation, which conclusion is neither supported by the facts nor the law. Appellants urge that the key issue in the instant case is not whether North Alamo can qualify under the provisions of § 11.18 of the Texas Property Tax Code as a "charitable organization" but rather whether North Alamo meets the definition of an institution of "purely public charity," as that phrase appears in TEX. CONST. art. VIII, Sec. 2, the constitutional authority pursuant to which § 11.18 was enacted.
Intervenor-appellee, the Attorney General of Texas, in his sole reply point urges that our Court need not address the constitutionality of the statute as applied in the instant case. We agree. In light of our sustaining appellants' previous points of error, the question of the constitutionality of the statute does not need to be addressed. A court will not pass on the constitutionality of a statute if the particular case before it may be resolved on another basis. San Antonio General Drivers, Helpers Local No. 657 v. Thornton, 156 Tex. 641, 299 S.W.2d 911 (1957), citing Waller v. State, 68 S.W.2d 601 (Tex.Civ.App. Amarillo 1934, writ ref'd.); Horton v. Horton, 625 S.W.2d 78 (Tex.App.Fort Worth 1981, writ ref'd. n.r.e.); Legislative enactments will not be held unconstitutional and invalid unless it is absolutely necessary to so hold. Texas State Board of Barber Examiners v. Beaumont Barber College, Inc., 454 S.W.2d 729 (Tex.1970); Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269 (1944); See also Wood v. Wood, 159 Tex. 350, 320 S.W.2d 807 (Tex.1959).
In their fourth point of error, appellants assert that the trial court erred in finding that a charitable organization which is qualified for exemption authorized by Chapter 11 of the Texas Property Tax Code is a charitable organization organized under Sec. 501(c)(3), Internal Revenue Code of 1954, as amended. The finding is, in fact, a conclusion of law and addresses no issue raised by the pleadings or evidence presented at trial. Appellants' fourth point of error is sustained.
In their fifth point of error, appellants assert that the trial court erred in awarding North Alamo $7,470.24 in attorney's fees in that said amount is excessive and in that there is no legal authority for such award.
Attorney's fees are not recoverable in an action unless provided by statute or a contract between the parties. Equitable Trust Co. v. Lyle, 627 S.W.2d 824 (Tex. App.San Antonio 1982, writ ref'd n.r.e.); Strickland Transportation Company v. Kool Kooshion Mfg. Co., 230 S.W.2d 277 (Tex.Civ.App.Fort Worth 1950, no writ); See New Amsterdam Casualty Co. v. Texas Industries, Inc., 414 S.W.2d 914 (Tex. 1967). At the time of trial, the only arguably applicable provision of the Texas Property Tax Code authorizing the recovery of attorney's fees in the instant case was *641 found in TEX.PROP.TAX CODE ANN. § 42.27 (Vernon 1982), which reads as follows:
§ 42.27. Additional Remedy for Erroneous Value
(a) The issue to be determined by the district court in an appeal under this section is whether or not the market value of the property in question according to the appraisal roll is in error.
(b) If the trier of fact finds that the market value is in error, meaning it is higher than the value set out by the property owner in a property information report properly filed pursuant to Chapter 22 of this code, then the trier of fact shall fix a market value for the property in question as January 1 of the tax year of controversy. In order for a taxpayer to prevail on appeal, the variance in market value must be found to be in excess of 5 percent of the market value as contended by the taxpayer.
(c) The market value fixed by the court or jury pursuant to Subsection (b) of this section shall be binding on the taxing units or unit involved in the law suit for the tax year in question.
(d) A taxpayer who prevails in an appeal to the court shall be entitled to reimbursement for reasonable attorneys fees.
Appellee North Alamo's First Amended Original Petition and the evidence do not raise the issue of the excessiveness of the Appraisal District's market valuation of North Alamo's properties; rather, the issue before the trial court was whether the Appraisal District had erred in determining appellee North Alamo's properties to be taxable. At no time in its appeal to the trial court did North Alamo complain that the Appraisal District had excessively valued the market value of North Alamo's properties. In construing § 42.27, we hold that § 42.27(d) does not apply to any other remedy (other than that remedy provided in Art. 42.27) provided under Chapter 42 of the Texas Property Tax Code.
The only other statutory provision, for which the trial court arguably could have awarded attorney's fees, was TEX. REV.CIV.STAT.ANN. art. 2524-1, § 10 (Vernon Supp.1984), under which appellants sought recovery of their attorney's fees with respect to their cross-petition for declaratory judgment. Appellee did not seek a declaratory judgment under Art. 2524-1 in order to otherwise entitle it to attorney's fees; therefore, the trial court was without authority to award attorney's fees. In addition, in light of our holding that North Alamo was not entitled to the tax exemption, appellee would not have been entitled to attorney's fees in any event. Appellants' fifth point of error is sustained.
In their sixth point of error, appellants assert that the trial court erred in finding that the taxable market value of the property in question was zero in that said finding addresses no issue raised by the pleadings or evidence presented at trial. We agree with appellants' contentions. We sustain appellants' sixth point of error.
In their eighth point of error, appellants assert that the trial court erred in refusing to hear and rule on appellants' cross-petition for declaratory judgment.
The trial court, in its separately filed Conclusions of Law, stated "The Court exercising the discretion granted by the Uniform Declaratory Judgments Act, Article 2524-1, V.T.C.S., as amended declines to rule on the cross-petition for Declaratory Judgment of the Defendants." However, in its judgment, the trial court recited "That this Court lacks jurisdiction to hear and therefore declines to rule on Defendants' Cross-Petition for Declaratory Judgment." It is clear that the trial court had jurisdiction under Art. 2524-1 to determine the constitutional validity of § 11.18, and appellants were entitled to obtain a declaration of its rights thereunder (See Art. 2524-1 Sec. 2); therefore, we hold that the recital in the trial court's judgment was a misstatement of law.
Art. 2524-1 § 6 provides that "The Court may refuse to render or enter a declaratory *642 judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings." Since the trial court, exercising its discretion, declined or refused to rule on appellants' cross-petition for declaratory judgment, the trial court is to be considered as having (impliedly) held that the statute (§ 11.18) was constitutional for which a specific ruling would not have terminated "the uncertainty or controversy giving rise to the proceeding"; otherwise, the trial court would not have had any discretion in declining to rule on appellants' cross-petition for declaratory judgment. It has been held to be within the discretion of a trial court to enter declaratory judgment which will end a controversy between the parties, but it is not held to be within the discretion of a trial court to enter a declaratory judgment which will not end a controversy. Harding Brothers Oil & Gas Company v. Jim Ned Independent School District, 457 S.W.2d 102 (Tex.Civ.App.Eastland 1970, no writ). Appellants' eight point of error is overruled.
Judgment of the trial court is REVERSED and judgment is here RENDERED that appellees are not entitled to a tax exemption under § 11.18 of the Property Tax Code or to an award of attorney's fees. Costs are assessed against appellees.