**Jacqueline W. ALLEN and C. Ray Allen, Appellants,**

v.

**Garry MAURO, Commissioner of the General Land Office, Appellee.**

**No. 08–85–00342–CV.**

Court of Appeals of Texas,
El Paso.

Nov. 19, 1986.
Rehearing Denied Dec. 17, 1986.

Jimmie D. Oglesby, Mike R. Borland, Borland & Borland, Midland, for appellants.

Jose Manuel Rangel, Asst. Atty. Gen., Austin, for appellee.

Before PRESLAR, C.J. (Retired), OSBORN, C.J., and SCHULTE, J.

## OPINION

SCHULTE, Justice.

This is a declaratory judgment suit. The case concerns the denial of applications for

prospecting permits filed by Appellants with the General Land Office under the Natural Resources Code (NRC). The matter was heard by the court without a jury and involved substantial acreage of University of Texas land and public school lands. We reverse the conclusions of the trial court that certain portions of the NRC were unconstitutional and otherwise repealed as well as its other findings, but affirm its judgment declaring that Appellants are not entitled to the permits.

Appellants applied to Appellee for the permits just prior to the repeal on February 1, 1983, of the sections of the NRC upon which Appellants relied. Appellee refused the permits asserting invalidity of those particular code provisions prior to the repeal.

The trial court declared unconstitutional "Sections 52.221 et seq., [sic] Subchapter G, Chapter 52, of the Natural Resources Code...." We can only assume the trial court intended to include all thirty-two sections of Subchapter G since it did not specify the sections except by the words "et seq." In any event, the subchapter and the condemned sections were part of the code and law of the state since September 1, 1977. The trial court's holding declared the sections null and void and unconstitutional as written and applied, and as being vague and indefinite. The trial court also declared that all pending applications filed thereunder were abolished including those filed prior to repeal of Subchapter G. The court further found that if its prior pronouncements were incorrect that nevertheless the sections in question were repealed by implication [although not expressly] on September 1, 1979, by "Senate Bill 526 Tex.Gen.Laws, Ch. 616, p. 1377," as far as University of Texas permanent fund lands were affected. Finally, the court found alternatively, that if not unconstitutional and not repealed, that in that event the commissioner of the General Land Office together with the School Land Board and the Board for Lease of University Lands had discretion to determine the method of leasing for oil and gas on lands under the jurisdiction of the respective boards. Appellants' six points of error contend the trial court erred in the findings and conclusions just recited.

It is basic that a court of appeals does not reach constitutional issues if the matter can be resolved on another basis. *Horton v. Horton*, 625 S.W.2d 78 (Tex.App —Fort Worth 1981, writ ref'd n.r.e.). However, where, as here, the trial court "reaches" those constitutional issues, we are obliged to confront them. When a law duly enacted is attacked as unconstitutional, the law is presumed to be valid, and doubts as to its constitutionality should always be resolved in favor of constitutionality. *Smith v. Decker*, 158 Tex. 416, 312 S.W.2d 632 (1958). It is the policy of the courts not to reach constitutional questions when adequate and independent grounds exist for disposing of the case. *Horton*, supra. We are persuaded that there existed adequate and independent grounds for the trial court to arrive at its judgment without employing the findings relied on.

If it is possible to state simply our reaction to the difficult case facing the trial court, it is this: We disagree with the court's findings, including those that declare Subchapter G of Chapter 52 of the Natural Resources Code unconstitutional. Nor do we believe it necessary to have taken that direction to reach its ultimate decision. With the result of its judgment, we do agree as we likewise determine that Appellants were not entitled to the permits. Appellants' avenue as to university land lies most appropriately through the Education Code provisions infra which specifically deal with those lands. The avenue to public school land is directly found in the more definitive provisions of the Natural Resources Code infra labeled "School Land Board." Appellants' reliance on the general provisions was misplaced. The special provisions, as we view them, are exceptions to the general law provided for at that time in the permit leasing provisions. We will, nevertheless, respond to each of Appellants' points of error and rule on them at one time at the conclusion of our discussion.

In Point of Error No. One, Appellant asserts the court below erred in holding that Tex.Nat.Res.Code Ann., ch. 52, subch. G, sec. "52.221 et seq." [sic], were not valid and operable statutes for obtaining oil and gas prospector's permits, and oil and gas leases in conjunction therewith, on Texas public free school lands and on University of Texas land, and that these statutes were null and void. Appellants argue that this conclusion is not supported by the provisions of the Natural Resources Code and other relevant statutes.

■ The cardinal rule of statutory construction is to ascertain and give effect to the intention of the legislature. *Schwarz v. State,* 703 S.W.2d 187 (Tex.1986). Effect must be given if possible to every word, clause and sentence of a statute being construed, and a construction should not be adopted, if it can be avoided, that will render any part of the act inoperative, nugatory or superfluous. *Orsinger v. Schoenfeld,* 269 S.W.2d 561, 564 (Tex.Civ.App.— San Antonio 1954, writ ref'd n.r.e.). As a general rule, an unambiguous statute is to be applied according to its literal terms; however, a statute will not be given literal effect if the result would be entirely unreasonable and out of accord with justice, nor will a statute be interpreted literally if such interpretation would lead to an absurd result. *Young v. Young,* 545 S.W.2d 551 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ dism'd). Language, although plain, but inconsistent with material parts of the law dealing with the real object in hand so that its literal construction and application would lead to the very absurdities and contradictions and consequent injustices that all authority asserts, should be avoided. *Sparks v. Kaufman County,* 194 S.W. 605 (Tex.Civ.App.—Dallas 1917, writ ref'd). A court cannot adopt a construction that will defeat the intent of the legislature, no matter how plainly a statute is worded. *Moorman v. Terrell,* 109 Tex. 173, 202 S.W. 727 (1918). Where one section of an act prescribes a general rule, which without qualification would embrace an entire class of subjects, and another section prescribes a different rule for individual subjects of the same class, the latter will be construed as

an exception to the general rule. *Walker v. Meyers,* 114 Tex. 225, 266 S.W. 499 (1924).

In the cause before this Court, Tex.Nat. Res.Code Ann. sec. 52.225 (Vernon 1978) seemingly placed a mandatory duty on the land commissioner to issue an oil and gas permit if the application and field notes were correct. *Freels v. Walker,* 120 Tex. 291, 26 S.W.2d 627, 630 (1930), *rehearing overruled,* 35 S.W.2d 408 (Tex.Comm'n App.1931). The permit section applied to surveyed land and unsurveyed land, which would include public school and university fund land. Section 52.221, *supra.* However, to give the statutes their literal meaning would ignore the legislative intent as to the leasing of public school and university land. The legislature through statutes has shown an intent to specifically provide for the lease of public school and university fund land through the bid method. When reenacting the permit leasing statutes into the NRC, the legislature omitted Article 5338 (of the Revised Civil Statutes of Texas of 1925), which had provided a specific list of land the permit statutes applied to, and this list included university and school land. The Texas Education Code provides that the university board will lease and control university land. Tex.Educ.Code Ann. secs. 66.61–66.80 (Vernon 1972). The School Land Board sets the prices and dates of sale for school fund land. Tex.Nat.Res. Code Ann. secs. 32.061 and 32.001 (Vernon 1978). These statutes are considered to be *in pari materia* because they are statutes which deal with the same general subject— the lease of state land for oil and gas purposes. *Texas State Board of Pharmacy v. Kittman,* 550 S.W.2d 104, 106 (Tex. Civ.App.—Tyler 1977, no writ).

■ Concerning those statutes *in pari materia,* it is necessary to construe them further so as to give effect to the statutes without rendering any part of the act inoperative, nugatory or superfluous. This is done by construction of the permit leasing statutes as covering a general subject matter (oil and gas development of state land), while the bid statutes under the Education Code and the school board section of the

Natural Resources Code are specific statutes relating to the development of oil and gas on university and school lands, respectively. Here, as in *American Indemnity Co. v. City of Austin,* 112 Tex. 239, 246 S.W. 1019, 1021 (1922), the court is looking to legislative history only to show the background of the statutes. The intent of the legislature that permit leasing is a general provision, while the bid method is specific, is gleaned from the actual statutes relating to the lease of state land construed as a whole. Thus, we find no merit in the trial court's finding that the sections under attack were null and void, invalid and inoperable.

In Point of Error No. Two, Appellants claim error in the holding that Tex.Nat. Res.Code Ann., ch. 52, subch. G, sec. "52.-221 et seq." [sic], were void and unconstitutional and in violation of Tex.Const. art. III, sec. 51; art. VII, sec. 4; and, art. VII, sec. 12, as written and as applied, because permits issued under such statutes do not constitute a "gift" of state public lands.

A statute can only be declared invalid if it conflicts with some provision of the constitution. *Glass v. Pool,* 106 Tex. 266, 166 S.W. 375 (1914). A duly enacted statute is presumed constitutional. *In re Johnson,* 554 S.W.2d 775 (Tex.Civ.App.—Corpus Christi 1977), *writ ref'd n.r.e. per curiam,* 569 S.W.2d 882 (Tex.1978). Under the facts before this Court, the repealed sections of the prior mineral act were duly reenacted by republication in Natural Resources Code Act, ch. 871, 1977 Tex.Gen. Laws 2345; Tex.Const. art. III, sec. 36 (Vernon 1984).

In evaluating the constitutionality of Tex.Nat.Res.Code Ann., ch. 52, subch. G (Vernon 1978), it must be presumed that the legislature enacted a constitutional law. *Staples v. State ex rel. King,* 112 Tex. 61, 245 S.W. 639 (1922). The trial court ruled that Subchapter G conflicted with Tex. Const. art. VII, secs. 4 and 12, and art. III, sec. 51, by creating a gift of the difference and amount between royalty required under Tex.Nat.Res.Code Ann. sec. 52.022 (Vernon 1978), and the royalty required under Section 52.236, *supra.* Section 52.-022 requires a minimum of one-eighth royalty on oil and gas, while Section 52.236 requires one-eighth royalty on oil and one-tenth on gas plus $2.00 per acre to be paid during the term of the lease.

Tex.Const. art. VII, secs. 4 and 12 (Vernon 1955), relate to the sale of public school and university fund lands. The sales are to be made in accordance with terms established by the legislature. The court in *State v. City of Austin,* 160 Tex. 348, 331 S.W.2d 737 (1960), while interpreting Tex. Const. art. III, sec. 51, held essentially that the purpose of constitutional prohibitions of grants of public monies is to prevent application of public funds to private purposes.

Before a legislative act will be set aside, it must clearly appear that its validity cannot be supported by any reasonable intendment or allowable presumption. *Prudential Health Care Plan, Inc. v. Commissioner of Insurance,* 626 S.W.2d 822 (Tex. App.—Austin 1981, writ ref'd n.r.e.). Further, the court's function is to declare and enforce the law as made by the legislature without regard to the policy or wisdom of the act or to the disaster or mischievous results it may entail. *Board of Insurance Commissioners of Texas v. Guardian Life Ins. Co. of Texas,* 142 Tex. 630, 180 S.W.2d 906 (1944). *See also: Gould v. City of El Paso,* 440 S.W.2d 696 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.).

■ The permit leasing statutes are general laws which provide for the lease of public land for oil and gas development. Tex.Nat.Res.Code Ann. sec. 52.022 (Vernon 1978), is a specific statute relating to the minimum royalty amount the school board must collect when leasing its property for oil and gas. The permit leasing statutes and the statute last cited do not apply to the same thing—one applies to the lease of permanent school fund land, while the other applies to the lease of public land in general; therefore, there is no difference in price as to the lease of school lands, and no gift in violation of the constitution. We disapprove of the trial court's finding to the contrary.

In Point of Error No. Three, Appellant states the trial court erred in holding that Tex.Nat.Res.Code Ann., ch. 52, subch. G, sec. "52.221 et seq." [sic], were void and unconstitutional as being vague and indefinite, because any ambiguity in the statutes can be resolved so that this unfavored construction is unnecessary.

The commissioner asserts that the permit leasing statutes were vague and indefinite on the basis that they fail to sufficiently identify the lands to which they applied. A statute is presumed valid and the burden is on the party asserting its invalidity. *Lloyd A. Fry Roofing Co. v. State*, 541 S.W.2d 639 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). See also: *Texas State Board of Barber Examiners v. Beaumont Barber College, Inc.*, 454 S.W.2d 729 (Tex.1970). It is a settled principle that statutory delegations of power may not be accomplished by language so broad and vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Texas Antiquities Committee v. Dallas County Community College District*, 554 S.W.2d 924 (Tex.1977).

The permit leasing statutes in Tex.Nat. Res.Code Ann. sec. "52.221 et seq." [sic], apply to surveyed and unsurveyed land. A commissioner of the General Land Office has no authority except that conferred on him by law. *State v. Robison*, 119 Tex. 302, 30 S.W.2d 292 (1930). The permit provisions only apply to public land which is not university or school fund land. This is evidenced by the specific nature of the statutes applying to the lease/sale of school/university fund land. Tex.Nat.Res. Code Ann. sec. 32.061 (Vernon 1978); Tex. Educ. Code Ann. sec. 66.64 (Vernon 1972).

The provision relating to surveyed and unsurveyed land is not so vague that men of common intelligence must guess at its meaning when the statute is construed in the context in which it was enacted, i.e., as a part of a total system of laws enacted to control public land. As stated in *Smith v. Davis*, 426 S.W.2d 827 (Tex.1968), the presumption is that the legislature has not acted unreasonably or arbitrarily, and mere difference of opinion where reasonable minds would differ is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The trial court's finding of unconstitutionality is without basis.

Appellants' fourth point of error deals with what we believe to be the erroneous conclusion of the trial court that the repeal of Tex.Nat.Res.Code Ann., Ch. 52, subch. G, sec. "52.221 et seq." [sic], effective February 1, 1983, retroactively abolished all pending applications for permits thereunder in instances, if any, involving rights that may have already vested. However, in view of our other holdings, our discussion would serve no useful purpose.

Appellants, in Point of Error No. Five, assert that the court below erred in holding that Tex.Nat.Res.Code Ann. sec. "52.221 et seq." [sic], ch. 52, subch. G, were repealed by implication on September 1, 1979, by Tex.S.B. 526 (1979), 1979 Tex.Gen.Laws 1377, as to university lands, because the intent to impliedly repeal said statutes cannot be found in the construction of said bill.

To expand somewhat on what we referred to under Point of Error No. One, in *Texas State Board of Pharmacy, supra*, the court held that it is a settled rule of statutory interpretation that statutes which deal with the same general subject or have the same general purpose are considered to be *in pari materia*, and will be taken, read and construed together as though they were parts of one and the same law in order to carry out the full legislative intent. The rule proceeds on the supposition that several statutes relating to one subject are governed by one spirit and policy and are intended to be consistent in their several parts and provisions. An act which is later in point of time controls or supersedes an earlier act insofar as the two are inconsistent and irreconcilable, and cannot both stand at the same time. In *City of Port Arthur v. Jefferson County Fresh Water Supply District No. 1*, 596 S.W.2d 553, 556 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.), the court held that repeals by implication are not favored, and laws related to the same subject should be considered as though incorporated in the same act. If they can be harmonized and effect given to

each when so considered, there is no repeal by implication. In the case before this Court, there was no express repeal of Tex. Nat.Res.Code Ann., ch. 52, subch. G (Vernon 1978), by the senate bill. The bill was enacted to provide that payments for the benefit of the permanent university fund be made to the board of regents instead of the land commissioner. Tex.S.B. 526 (1979); ch. 616, 1979 Tex.Gen.Laws 1377.

■ When the question is one of an implied repeal, it is not sufficient that there be a discrepancy between different parts of a system of legislation upon the same general subject; there must be a conflict between different statutes upon the same specific subject. *Royalty v. Nicholson,* 411 S.W.2d 565, 569 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.).

■ The 1979 act did not attempt to prescribe rules in the same area of law as the permit leasing statutes. What we view here are different parts of a system of legislation upon the same general subject. The university fund land statutes provide for the bid process and vest control of such land in the board created for that purpose. The permit leasing statutes are general in that they apply to all surveyed and unsurveyed state land. The statutes relating to the lease of permanent university fund land are specific. Those statutes only apply and only provide regulations for permanent university fund land; no other types of land are listed. These statutes can be harmonized, and effect given to each, without the necessity of repeal by implication.

As stated in *Ramirez v. State of Texas,* 550 S.W.2d 121 (Tex.Civ.App.—Austin 1977, no writ), for repeal by implication to occur, the implication must be clear, necessary, irresistible and free from reasonable doubt. Here, the implication for repeal is not clear, necessary, irresistible, or free from reasonable doubt. The court's finding to the contrary is disapproved.

■ Appellants by their final point take issue with the court's finding that the commissioner and the respective boards had discretion to lease the lands in question by either the sealed bid and auction or permit method. Appellants acknowledge that the 1977 Legislature, in enacting the Natural Resources Code, picked up statutes from the revision of 1925 that had been repealed by the Sale and Leasing Act, ch. 271, 1931 Tex.Gen.Laws 452. Further, Appellants acknowledge that in *Theisen v. Robison,* 117 Tex. 489, 8 S.W.2d 646 (1928), the court held that the permit leasing statutes, with respect to university land, were repealed. In 1929, the 41st Legislature, in response to *Theisen, supra,* provided for the sale of oil and gas in university lands (ch. 282, 1929 Tex.Gen.Laws 616). The act created the board, set out the duties of the board and the commissioner of the General Land Office, and provided for the bid process.

Thereafter, the 42nd Legislature enacted the Sales and Leasing Act of 1931, ch. 271, 1931 Tex.Gen.Laws 452, which repealed Article 5338, *supra.* The purpose of the act was to "regulate the sale and lease of lands set apart for the benefit of the public free school fund, ... providing generally the method and means for the sale." In 1939, this act was amended to provide for the School Land Board. Land Vacancies Act, ch. 3, 1939 Tex.Gen.Laws 465. When the legislature enacted the Natural Resources Code, it reenacted the statutes relating to the School Land Board, the statutes relating to public school land, and the permit leasing statutes; however, Article 5338 was not reenacted. Instead, a broader definition of the land subject to permit leasing is used throughout the subchapter. That definition is provided for in Tex.Nat.Res. Code Ann., ch. 52, subch. G, sec. 52.221 (Vernon 1978). The words used are surveyed land and unsurveyed land. Throughout the subchapter there are no references to public school land and one reference to university land. Tex.Nat.Res. Code Ann. sec. 52.245 (Vernon 1978), relates to the transfer of university land. Its counterpart is Tex.Educ.Code Ann. sec. 66.73 (Vernon Supp.1986). The statutes can be harmonized, as Section 52.245, *supra,* applies to the *old permit* leases which still may be in effect. There is further reference to university and school funds found in Tex. Nat.Res.Code Ann. sec. 52.241 (Vernon 1978), entitled "Disposition of Proceeds."

This provision, rather than showing that university and school lands were still encompassed by the permit leasing statutes, merely assures that funds received when university and school lands were still leased by permit will go to the appropriate department.

Tex.Educ.Code Ann. secs. 66.61–66.80 (Vernon 1972), provide that it is the board acting as a majority that puts university land on the market, that advertises land, and accepts a bid or withdraws university land from the bid process. The university board is restricted to the control of only university land. Tex.Educ.Code Ann. secs. 66.41 and 66.64 (Vernon 1972).

Under Tex.Nat.Res.Code Ann. secs. 32.-001–32.111 (Vernon 1978), the School Land Board is composed of three members, including the commissioner of the General Land Office who serves as chairman. Section 32.014, *supra*. Under this section, land means permanent school fund land and the board shall set the price and time at which it is sold. The board accepts and rejects bids. Section 32.109, *supra*. It sets the dates for sale and lease. It determines the prices for which land is sold and leased. Section 32.061, *supra*.

The statutes relating to the board for lease of university lands and the statutes relating to the lease of school land and the School Land Board are mandatory, as they use exclusive language which vests control of public school land and university land in their respective boards of control. Statutes can be classified as general or special. A general act is one of general terms and uniform operation. A special act is one that regulates the rights or interest of a particular and designated person or thing. 53 Tex.Jur.2d Stat. secs. 10 through 13 (1964), special laws now in 12 Tex.Jur.3d Constitutional Law sec. 70 (1981).

In *Lakeridge Development Corporation v. Travis County Water Control and Improvement District No. 18*, 677 S.W.2d 764, 767 (Tex.App.—Austin 1984, no writ), the court held that a statute specifically applying to a water control and improvement district's recovery of attorney fees would prevail over a statute generally applying to attorney fees for taxing units, since it was a specific enactment. In *Lakeridge*, the general statute was enacted in 1982, while the specific statute was enacted in 1972. It is the subject matter of a general or special statute that governs, not the date of the enactment. *See also: Sam Bassett Lumber Co. v. City of Houston*, 145 Tex. 492, 198 S.W.2d 879, 881 (1947).

This idea is expressed in Tex. Gov't Code Ann. sec. 311.026 (Vernon Pamphlet 1986), which provides:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.

In *Bassett*, supra, the court held that the general rule is when the law makes a general provision, apparently for all cases, and a special provision for a particular class, the general must yield to the special insofar as the particular class is concerned. Although we view the permit leasing statutes as general and the statutes relating to the School Land Board and the Board for Lease of University Land as specific, these boards were not allowed unfettered discretion, nor was the commissioner. All are governed by the specific provisions applicable to the particular land under consideration.

To the extent that we agree with Appellants that the trial court's findings numbered one through six in its judgment are in error, we sustain Appellants' points, but to that extent only.

Although we may agree with Appellants in taking issue with the trial court's route in arriving at its judgment, we agree with the judgment. A judgment, if correct, will be sustained on appeal irrespective of the ground on which it is based below. *Rio Bravo Oil Co. v. Staley Oil Co.*, 138 Tex. 198, 158 S.W.2d 293 (1942); *McGowan v.*

*Pasol,* 605 S.W.2d 728 (Tex.Civ.App.—Corpus Christi 1980, no writ). If a judgment entered is correct, assignment by the trial court of a wrong reason does not constitute reversible error. *Dennis v. Allison,* 678 S.W.2d 511 (Tex.App.—El Paso 1984), *aff'd,* 698 S.W.2d 94 (Tex.1985).

Conclusions One through Six of the trial court contained in its judgment bearing date the 22nd day of October, 1985, are disapproved and reversed. The judgment of the trial court declaring that Appellants are not entitled to the issuance of the permits is affirmed.

PRESLAR, C.J., Ret., not sitting.