Charles E. EARLE, Chief Appraiser, et al., Appellants,

v.

PROGRAM CENTERS OF GRACE UNION PRESBYTERY, INC., Appellees.

No. 2–83–077–CV.

Court of Appeals of Texas, Fort Worth.

May 23, 1984.

Law Offices of Earl Luna, P.C., Earl Luna and Mary Milford, Dallas, for appellants.

Smith, Smith & Florsheim, Lee Smith, Dallas, for appellees.

Before HUGHES, ASHWORTH and JOE SPURLOCK, II, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is an appeal from a judgment rendering certain property owned by Program Centers of Grace Presbytery, Inc., appellee [hereinafter referred to as Program Centers], exempt from the ad valorem tax rolls

of Denton County Appraisal District. Charles E. Earle, Chief Appraiser of the Denton County Appraisal District, et al., defendants below [hereinafter referred to as Appraisal District or appellant], sought to levy and collect taxes on Briarwood Retreat Center owned by Program Centers, plaintiffs below. The taxes were paid under protest and Program Centers requested a hearing before the Appraisal Review Board. Program Centers claimed exemption for the retreat center as an "actual place of religious worship" pursuant to TEX. CONST. art. VIII sec. 2 as defined by the Legislature in TEX.TAX CODE ANN. sec. 11.20 (Vernon 1982). The Appraisal Board denied the exemption except for one (1) acre for a minister's dwelling. Program Centers timely appealed to the 16th District Court in Denton. The case was tried before a jury upon special issues. Based upon the jury's answers to the special issues, the trial court entered judgment for Program Centers, exempting Briarwood Retreat Center from assessment and ad valorem taxation.

We reverse and remand.

The Appraisal District has appealed alleging eighteen points of error. It challenges the constitutionality of TEX.TAX CODE ANN. sec. 11.20 providing an exemption for religious organizations as being unconstitutionally broad. It contends that error was committed in submission of the special issues and the evidence is insufficient to support the jury verdict.

The record reflects that Program Centers is a nonprofit Texas corporation established by Grace Union Presbytery, Inc. for the purpose of owning and operating church camps and program centers. Briarwood Retreat Center is owned and operated by Program Centers and consists of approximately 69 acres located in Denton County. A.M. Hart, co-general presbyter and stated clerk of Grace Union Presbytery, gave extensive testimony concerning the use made of the Briarwood facility on a regular and year-round basis. On the basis of Hart's testimony, the jury found that all the property of Briarwood Retreat Center was used primarily as a place of religious worship and was reasonably necessary for engaging in such religious worship.

In its first three points, appellant argues that the definition of "religious worship" contained in sec. 11.20 and given by the court in its charge is unconstitutionally broad.

TEX. CONST. art. VIII sec. 2 provides the following in pertinent part:

*[T]he legislature may, by general laws, exempt from taxation ... actual places of religious worship,* also any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place of the ministry of such church or religious society, and which yields no revenue whatever to such church or religious society; provided that such exemption shall not extend to more property than is reasonably necessary for a dwelling place and in no event more than one acre of land; ... (Emphasis added.)

The foregoing constitutional provision is not self-executing; it permits the legislature to exempt "actual places of worship" and the dwelling place of the ministry up to one acre. Pursuant to this authority, the legislature enacted TEX.TAX CODE ANN. sec. 11.20, exempting real and tangible personal property if it is owned by a religious organization used primarily as, or at, a place of regular religious worship and is reasonably necessary for engaging in religious worship. The statute defines "religious worship" to mean "individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith." TEX.TAX CODE ANN. sec. 11.-20(e) (Vernon 1982).

██ Appellant contends that this definition of "religious worship" exceeds the parameters established by the Texas Constitution at art. VIII, sec. 2. While we agree the definition is broad, we cannot agree that it is unconstitutionally broad. We are required to construe a statute in a

manner which renders it constitutional if it is possible with a reasonable interpretation of its language. *Swearingen v. City of Texarkana,* 596 S.W.2d 157 (Tex.Civ.App. —Texarkana, 1979, writ ref'd n.r.e.). Since it is presumed that the Legislature acted constitutionally, we must, if possible construe TEX.TAX.CODE ANN. sec. 11.20 in such a manner that it does not offend the Constitution. However, if such an interpretation is not possible, then the Constitution must prevail over the statute. *State v. Shoppers World, Inc.,* 380 S.W.2d 107 (Tex.1964); *Duncan v. Gabler,* 147 Tex. 229, 215 S.W.2d 155 (1948).

TEX. CONST. art. VIII sec. 2 authorizes the legislature to exempt "actual places of religious worship," but does not attempt to define the term, leaving such to the discretion of the legislature. In construing art. VIII sec. 2 and the now repealed art. 7150 (the predecessor statute to sec. 11.20), the Texas Supreme Court declared that "[w]hat constitutes an actual place of religious worship as those words are used in the Constitution and statutes is a fact issue which the claimant has the burden to prove." *Davies v. Meyer,* 541 S.W.2d 827, 829 (Tex.1976). Section 11.20, the Legislature's latest effort to provide for this exemption and to provide the fact finder with guidelines to assist it in its determination, became effective January 1, 1982. *Highland Church of Christ v. Powell,* 644 S.W.2d 177 (Tex.Civ. App.—Eastland 1982, writ ref'd n.r.e.) is the only decision under the new sec. 11.20. In *Highland,* the court stated:

> The definition of "religious worship" which is now contained in paragraph (e) of Section 11.20 is broad in scope. Much of the language contained in earlier cases discussing the difference between "religious work" and "religious worship" is no longer significant. Those cases dealt with statutes containing no statutory definition of "religious worship," or a definition different from the definition presently contained in Section 11.20. See *Davies v. Meyer,* 541 S.W.2d 827 (Tex. 1976); *Swearingen v. City of Texarkana,* 596 S.W.2d 157 (Tex.Civ.App.— Texarkana 1979, writ ref'd n.r.e.). *Radio*

*Bible Hour, Inc. v. Hurst-Euless Independent School District,* 341 S.W.2d 467 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n.r.e.). Also, in each of the above cited cases the fact finder found in favor of the taxing authority, and the appellant in each case had the difficult burden of setting aside the fact finding. Here, the fact finder found against the taxing authorities, and the Highland Church of Christ need only show that there is some evidence to support the special issues which the trial court disregarded.

We have examined the authorities cited by appellant and find nothing which would preclude the Legislature's "breathing life" into the meaning of the Constitutional phrase "actual places of religious worship." Problems involving the meaning of "actual places of religious worship" have continually plagued the courts. As stated by the eminent jurist, now Chief Justice, Jack Pope, "perhaps any definition [of worship] may be inadequate to embrace all of what is meant by the word, 'worship.'" *Davies v. Meyer, supra* at 829. The Constitution gives wide latitude to the Legislature to provide for the exemption. We do not find the Legislature's definition of "religious worship" exceeds the scope of art. VIII sec. 2. We conclude that the statute is constitutional and that the instruction defining "religious worship" given in the charge almost verbatim from the statute was proper. Points of error one, two, and three are overruled.

■ In several points of error, appellant contends that the trial court erred in overruling his objections to certain special issues. TEX.R.CIV.P. 279 provides in pertinent part:

> When the court submits a case upon special issues, he shall submit the controlling issues made by the written pleadings and the evidence, ... Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complain-

ing of the judgment; provided, however, that *objection to such failure shall suffice in such respect if the issue is one relied upon by the opposing party.* (Emphasis added.)

Because the burden in the instant case was on Program Centers, the taxable entity seeking a tax exemption, to establish entitlement to an exemption, appellant, to preserve error in submission of the special issues, need only have objected to the submission of the special issues prior to their submission to the jury and distinctly pointed out to the trial court the basis of his objection.

In point of error four, appellant contends that the trial court erred in overruling his objection to Special Issue No. One and submitting same to the jury because the special issue omits an essential element necessary for the ultimate finding required by sec. 11.20. Section 11.20 provides in pertinent part:

(a) An organization that qualifies as a religious organization as provided by Subsection (c) of this section is entitled to an exemption from taxation if:

(1) the real property that is owned by the religious organization, is used *primarily* as a place of *regular* religious worship, ... (Emphasis added)

Special Issue No. One as submitted to the jury states:

### SPECIAL ISSUE NO. ONE

Do you find from a preponderance of the evidence that all of the property owned by the Program Centers of Grace Union Presbytery, Inc. and known as the Briarwood Retreat Center is used primarily as a place of religious worship. Answer yes or no.

Answer: *Yes*

The issue was submitted as initially requested by the appellant; however, prior to submission to the jury, appellant objected to Special Issue No. One on the ground that the same is an incorrect statement of the law in that it states, "is used primarily as a place of religious worship" when it

should in fact say, pursuant to sec. 11.20, that it is used primarily as a place of *regular* religious worship. By objecting prior to submission of the issue and distinctly pointing out his grounds for objection, appellant has preserved the error for review.

■ Special Issue No. One omitted the factual element that the property be used "regularly." Appellant contends that omission of the word "regular" creates a different standard than that contemplated by the statute. The statute requires that the property be used both *primarily* and *regularly* for religious worship. These terms are not synonymous. *Black's Law Dictionary* defines "primarily" as "First; principal; chief; leading," and defines "regular" as "[s]teady or uniform in course, practice, or occurrence." Consequently, a piece of property may be used primarily as a place of worship, but not be used regularly. Likewise, the converse is true. A piece of property may regularly be used as a place of worship even though the primary use of the property may be totally unrelated to religious worship, such as holding regular worship in a school building or movie theater. It is clear that before property may be exempt from taxation under sec. 11.20, it must be found to be used both primarily and regularly as a place of religious worship. Therefore, Special Issue No. One, as submitted to the jury, is erroneous and the trial court erred in overruling appellant's objection. Appellant's fourth point of error is sustained.

In four points of error, appellant contends that the trial court erred in overruling his objections to Special Issues Nos. Two, Three, and Four because all three issues were directed to Briarwood Retreat Center rather than Program Centers of Grace Union Presbytery, Inc., the organization seeking the tax exemption under sec. 11.20. We agree.

To qualify for exemption under sec. 11.-20, the property in question must be owned by a religious organization. To qualify as a religious organization, the organization claiming the exemption must meet the

qualifications set forth at sec. 11.20(c), which provides:

(c) To qualify as a religious organization for the purposes of this section, an organization (whether operated by an individual, as a corporation, or as an association) must:

(1) be organized and operated primarily for the purpose of engaging in religious worship or promoting the spiritual development or well-being of individuals;

(2) be operated in a way that does not result in accrual of distributable profits, realization of private gain resulting from payment of compensation in excess of a reasonable allowance for salary or other compensation for services rendered, or realization of any other form of private gain; and

(3) by charter, bylaw, or other regulation adopted by the organization to govern its affairs:

(A) pledge its assets for use in performing the organization's religious functions; and

(B) direct that on discontinuance of the organization by dissolution or otherwise the assets are to be transferred to this state or to a charitable, educational, religious, or other similar organization that is qualified as a charitable organization under Section 501(c)(3), Internal Revenue Code of 1954, as amended.

(d) Use of property that qualifies for the exemption prescribed by Subdivision (1) or (2) of Subsection (a) of this section for occasional secular purposes other than religious worship does not result in loss of the exemption if the primary use of the property is for religious worship and all income from the other use is devoted exclusively to the maintenance and development of the property as a place of religious worship.

(e) For the purposes of this section, "religious worship" means individual or group ceremony or meditation, education, and fellowship, the purpose of which is to manifest or develop reverence, homage, and commitment in behalf of a religious faith.

Special Issues Nos. Two, Three, and Four as submitted to the jury are:

SPECIAL ISSUE NUMBER TWO

Do you find from a preponderance of the evidence that Briarwood Retreat Center owned by Presbyterian Church, Grace Union Presbytery, Inc. of the Presbyterian Church is organized and operated primarily for the purpose of engaging in "religious worship" (as that phrase has been hereinabove defined). Answer yes or no.
ANSWER: *Yes.*

SPECIAL ISSUE NUMBER THREE

Do you find from a preponderance of the evidence that Briarwood Retreat Center owned by Grace Union Presbytery of the Presbyterian Church is operated in a way that does not result in any form of private gain?
Answer yes or no.
ANSWER: *Yes.*

SPECIAL ISSUE NUMBER FOUR

Do you find from a preponderance of the evidence that Briarwood Retreat Center owned by Grace Union Presbytery of the Presbyterian Church has by its corporate charter pledged its assets for use in the performing of religious functions and upon discontinuance of Briarwood Retreat Center in an operable way in any way its assets are immediately owned by Grace Union Presbytery?
Answer yes or no.
ANSWER: *Yes.*

■ Special Issues Nos. Two, Three, and Four were erroneously directed to Briarwood Retreat Center, the name of the property in question. They should have been directed to the religious organization which owned the property and claimed the exemption as required by TEX.TAX CODE ANN. sec. 11.20(c). These issues, as submitted and answered, are irrelevant to the determination of any right to a property tax exemption. Absent findings that Program Centers of Grace Union Presbytery, Inc.

met the requirements of sec. 11.20(c), there is no basis to support a judgment granting a tax exemption to Program Centers of Grace Union Presbytery, Inc.

In the instant case, the burden was on Program Centers, the taxable entity seeking an exemption from taxation, to establish an entitlement to an exemption and to have proper special issues submitted to the jury. Appellant properly and timely objected to the submission of Special Issues Nos. Two, Three, and Four, distinctly pointing out to the trial court that the wrong entity was the subject of the inquiry in each issue and, thereby, preserving the errors for review by this court. Therefore, having found error in submission of Special Issues Nos. Two, Three, and Four, we sustain points of error five, six, seven, and eight.

Because of our disposition of appellant's points of error four through eight, we find it unnecessary to address his other points challenging the sufficiency of the evidence to support the jury verdict.

We reverse and remand.