**ARANSAS COUNTY APPRAISAL RE-VIEW BOARD and Aransas County Appraisal District, et al., Appellants,**

**v.**

**TEXAS GULF SHRIMP CO., et al., Appellees.**

**No. 13–85–344–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 27, 1986.

Rehearing Denied March 20, 1986.

187

Russell R. Graham, Austin, for appellants.

Dwight Martin, Asst. Atty. Gen., Austin, Wilson Calhoun, Corpus Christi, for appellees.

James R. Raborn, Baker & Botts, Glen A. Rosenbaum, James D. Penny, Vinson & Elkins, Houston, amicus curiae.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

NYE, Chief Justice.

This is a declaratory judgment action arising under the Texas Property Tax

Code.[1] Suit was originally brought as a petition for review, pursuant to Chapter 42 of the Code, by appellees, the owners of ninety-five gulf shrimping trawlers (hereinafter referred to as Taxpayers), seeking judicial review of the action of appellants (Tax Assessors) in denying a special allocation of value of these vessels for the 1984 tax year. Tax Assessors cross-petitioned against taxpayers, the Attorney General of the State of Texas, and the State Property Tax Board,[2] seeking a declaratory judgment that Sections 21.03 and 21.031 of the Code are unconstitutional. The trial court denied Tax Assessors' cross-petition and entered judgment in favor of taxpayers. Appeal is taken from that judgment, which we reverse and render.

In summary, Tax Assessors argue that the relevant statutes are either unconstitutional or inapplicable to taxpayers' shrimp trawlers. Appellants contend the trial court erred in entering judgment for taxpayers because the judgment is necessarily based on the trial court's conclusion of law that Sections 21.03 and 21.031 are constitutional.

Section 21.03(a) provides: "If personal property that is taxable by a taxing unit is used continually outside this state, whether regularly or irregularly, the appraisal office shall allocate to this state the portion of the total market value of the property that fairly reflects its use in this state."

Section 21.031(a) provides:

If a vessel or other watercraft that is taxable by a taxing unit is used continually outside this state, whether regularly or irregularly, the appraisal office shall allocate to this state the portion of the total market value of the vessel or watercraft that fairly reflects its use in this state. *The appraisal office shall not allocate to this state the portion of the total market value of the vessel or watercraft that fairly reflects its use in another state or country, in interna-*

*tional waters, or beyond the Gulfward boundary of this state.* (Emphasis added).

Tax Assessors challenge these provisions under TEX. CONST. ANN., Art. VIII, Sections 1 and 2, which provide in pertinent part: "Section 1. Taxation shall be *equal and uniform.* All real property and tangible personal property in this State, whether owned by natural persons or corporations, other than municipal, *shall be taxed in proportion to its value,* which shall be ascertained as may be provided by law;" and "Section 2(a) ... and *all laws exempting property from taxation other than the property mentioned in this Section shall be null and void."* (Emphasis added.)

■ The Constitution does not expressly exempt property from taxation, but it does authorize the legislature to provide specific exemptions by statute within certain specific parameters. *Dickison v. Woodmen of the World Life Insurance Society,* 280 S.W.2d 315, 317 (Tex.Civ.App.—San Antonio 1955, writ ref'd). While the legislature may restrict an exemption authorized in the Constitution, it may not go beyond the constitutional parameters. Any attempt to do so is null and void. If the legislature declares a specific exemption that is not expressly authorized by the Constitution, the exemption statute is unconstitutional. *City of Amarillo v. Love,* 356 S.W.2d 325, 327 (Tex.Civ.App.—Amarillo 1962, writ ref'd n.r.e.); *see also City of Witchita Falls v. Cooper,* 170 S.W.2d 777, 780 (Tex. Civ.App.—Fort Worth 1943, writ ref'd). When construing constitutional authorizations or statutory provisions which grant tax exemptions, our courts must resolve any doubts against the exemption because tax exemptions are never favored. *Davies v. Meyer,* 528 S.W.2d 864, 867 (Tex.Civ. App.—Fort Worth 1975), *aff'd,* 541 S.W.2d

---

**1.** All citations to statutory provisions herein are to the TEX. PROP. TAX CODE ANN. (Vernon 1982 and Supp.1986), unless otherwise indicated.

**2.** The Attorney General and the State Property Tax Board will be collectively referred to as the State.

827, 829 (Tex.1976); *City of Wichita Falls,* 170 S.W.2d at 780.

The facts of this case are undisputed. The parties are in agreement that the vessels owned by taxpayers are operated within the boundary of this state 30% of the year and are operated outside Texas waters 70% of the year. The parties also agreed that: 1) these vessels are domiciled in Texas and have a taxable situs in Aransas County; and 2) none have acquired a taxable situs in another state or nation or have been exposed to taxation in another state or nation.[3]

The dispute in this case centers on the legal interpretation of these statutes and the constitutional provisions set out above. Tax Assessors have distilled their constitutional argument into four points. First, the challenged statutes create a tax exemption which, in order to be valid, must be authorized by the Texas Constitution or imposed by some overriding requirement of federal law. Second, there is no authorization in the Texas Constitution which allows for this partial exemption merely because the property is used regularly or irregularly outside the Gulfward boundary of this state. Third, there is no overriding federal requirement which would prevent taxation of property domiciled in this state at 100% of its value in absence of a showing that the property has also acquired a taxable situs in another state or nation. Fourth, in the absence of any authorization in the Texas Constitution or any requirement of federal law, such a statute which provides for the taxation of property domiciled and having a taxable situs in this state at less than its full value is, as a matter of law, unconstitutional.[4] The real issue in this case is the constitutional limitations on the authority of the Texas Legislature to define the tax situs of these vessels.

The only guidance the Texas Constitution gives regarding tax situs is Article VIII, Section 11, which provides that property "shall be assessed for taxation and taxes paid in the county where situated." The phrase "where situated" is not defined in the Constitution, but has been interpreted to be in accordance with the common law principle *mobilia sequuntur personam* (movables follow the person), that tangible personal property is taxable at the owner's domicile unless it has acquired an actual situs elsewhere or a statute directs that it be taxed elsewhere. *Great Southern Life Insurance Co. v. City of Austin,* 112 Tex. 1, 243 S.W.2d 778, 780–82 (1922); *see also State v. Crown Central Petroleum Corp.,* 242 S.W.2d 457, 461 (Tex.Civ.App.—San Antonio 1951, writ ref'd). The Texas Supreme Court has interpreted this constitutional provision to allow for reasonable legislative action in fixing the tax situs of property. *Dallas v. Texas Prudential Insurance Co.,* 156 Tex. 36, 291 S.W.2d 693, 695 (1956); *Great Southern Life Insurance Co.,* 243 S.W.2d at 784. But the Supreme Court has never allowed the legislature to give preferential treatment to certain personal property not specifically authorized by the Constitution. Taxpayers contend that the trawlers may not be taxed at the domicile of the owners because a statute directs otherwise. The statutes do not direct that the property be taxed elsewhere, but rather that a portion of the property not be taxed at all.

We have found no cases testing the power of the legislature to fix the tax situs of personal property outside of this state and not inside another taxing jurisdiction. The cases cited by taxpayers which interpret this situs provision of the Constitution involve the legislature's power to fix tax situs among different taxing authorities within this state.

Taxpayers respond that Sections 21.03 and 21.031 do not provide a tax exemption, but merely define tax situs in accordance with federal constitutional restrictions. They interpret federal law to allow a state

3. The evidence reveals that only eight of the ninety-five shrimping trawlers even came into contact with another state or nation during the relevant time period.

4. The State is in basic agreement with appellants' argument that Section 21.031 does grant a tax exemption, one that is not authorized by the Texas Constitution or required by federal law.

(even a domiciliary state) to tax property only when it is physically present within the state. They argue further that the Texas Constitution merely requires property located *in* this state to be taxed. Taxpayers take the position that sections 21.03 and 21.031 simply define tax situs and do not grant an exemption. They claim these statutes "are no more than a legislative declaration that the tax situs of vessels ... used continually beyond the Gulfward boundary of this state is where such property is located at any given time." In other words, "each vessel is taxed at full value, without reduction or exemption, for the portion of the year the vessel is actually within the state." The effect of this argument would be that the tax situs of these vessels would not be within any taxing jurisdiction for 70% of the year, therefore, 70% of the value of these vessels would go untaxed.

Although there are no Texas cases directly on point, a recent decision by the Dallas Court of Appeals is analogous and instructive on this question. *Dallas County Appraisal District v. L.D. Brinkman and Co. (Texas),* 701 S.W.2d 20 (Tex.App.—Dallas, 1985, no writ) (not yet reported) concerned whether a percentage of property (inventory), brought from out of the state and stored in warehouses awaiting shipment to other out-of-state destinations within 175 days of its arrival, was subject to ad valorem taxation in Texas. The trial court entered judgment in favor of the taxpayers by excluding 30% of the value of this inventory from taxation pursuant to Section 11.01(c) and (d). These provisions define this state's jurisdiction to tax certain kinds of property presumed to be in interstate commerce. They provide that Texas has no jurisdiction to tax such property if it is only temporarily located in Texas and is not used continually in Texas.

In its opinion, the Court of Appeals stated:

If, however, the legislature were to define taxing jurisdiction in such a way that property subject to taxation under the Texas Constitution and federal law was not subject to taxation under the statutory definition of taxing jurisdiction, the legislature would be indulging in an unconstitutional attempt to grant an exemption from taxation.

*Brinkman* at 22. The Court went on to hold that these provisions must be interpreted in light of the Texas Constitution and federal law. The Court determined that the property was not located in Texas for only a temporary period, and, thus, was subject to taxation in this state at full value.

The Texas Supreme Court's decision in *Greyhound Lines, Inc. v. Board of Equalization of Fort Worth,* 419 S.W.2d 345 (Tex.1967) is also relevant to this issue. That case involved the rolling stock of a foreign bus company having a principal place of business in Texas. The bus company objected to the imposition of an apportioned ad valorem tax on its rolling stock. It argued that its buses did not have a tax situs in Texas based on the common law rule *mobila sequunter personam,* and, therefore, the buses were constructively located in the corporate domicile in another state and thus could not be taxed here. *Id.* at 347. The Court noted that neither the Texas Constitution nor any statute provided for an exemption in this instance, and there was no federal law that prohibited such a tax. *Id.* at 348–49. The buses constantly traveled on Texas highways and enjoyed the benefits and protections of this state. Thus, the Court ruled that to hold that these buses had no tax situs in Texas, even though taxation was permissible under federal law, was the equivalent to an illegal tax exemption. *Id.*

Appellees cite *Republic Insurance Co. v. Highland Park Independent School District,* 129 Tex. 55, 102 S.W.2d 184 (1937) to support their position that the legislature may allow for taxation of less than the full value of property. *Republic Insurance* offers no support for this position. That case involved a statute which defined what property of fire and casualty insurance companies was taxable. The statute required a deduction for the value of the "reinsurance

reserve" (the amount required to be reserved by the companies to insure outstanding risks on unexpired policies; i.e., unearned premium reserves). A school district challenged the constitutionality of the statute as an unauthorized tax exemption. The Supreme Court upheld the constitutionality of the statute because the "reserves" were actually an indebtedness of the companies, not an item of property. *Id.* at 193. The legislature had merely prohibited the imposition of a property tax on items that were not clearly property. It cannot realsitically be argued that these trawlers are not property.

■ Regardless of whether a statute purports to define jurisdiction to tax or tax situs, if it allows property, or a portion thereof, to go untaxed, it effectively grants a tax exemption. We therefore must hold that Sections 21.03 and 21.031 grant at least a partial tax exemption.

■ The parties are in agreement that none of the exemptions authorized in Article VIII, Section 2 of the Texas Constitution are applicable in the instant case. Our inquiry now centers on whether such an allocation of value (exemption) is required by any overriding federal law. A state's power to impose tax on tangible personal property involved in interstate commerce is limited by federal law. In general, there are two federal constitutional provisions which impact on a state's power to impose ad valorem property taxes: (1) the Commerce Clause (U.S. Const. art. I, § 8, cl. 3) and (2) the Due Process Clause (U.S. Const. amend. XIV).

Each of these provisions address distinct federal concerns. The requirements imposed by the Commerce Clause have been articulated by the United States Supreme Court in a four-part test which provides that a state's tax does not violate the Commerce Clause if it: (1) "is applied to an activity with a substantial nexus with the taxing state;" (2) "is fairly apportioned;" (3) "does not discriminate against interstate commerce;" and (4) "is fairly related to the services provided by the state." *Japan Line LTD v. County of Los Angeles,* 441 U.S. 434, 444–45, 99 S.Ct. 1813, 1819–20, 60 L.Ed.2d 336 (1979); *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977).

■ Whether property has a tax situs in a particular state is purely a due process question. *Braniff Airways v. Nebraska State Board of Equalization and Assessment,* 347 U.S. 590, 598–99, 74 S.Ct. 757, 762–63, 98 L.Ed. 967 (1954). The test under the Due Process Clause is whether " 'the tax in practical operation has relation to opportunities, benefits, or protections conferred or afforded by the taxing State.' " *Id.* at 600, 74 S.Ct. at 763 (*quoting Ott v. Mississippi Valley Barge Line Co.,* 336 U.S. 169, 174, 69 S.Ct. 432, 434, 93 L.Ed. 585 (1949)). Thus, the Due Process Clause also requires that the tax imposed be fairly apportioned to the commerce carried on within the taxing state. *Ott,* 336 U.S. at 174, 69 S.Ct. at 434. It is apparent to us that these are the overriding federal requirements the Texas Legislature sought to address in Sections 21.03 and 21.031.

As pointed out by Tax Assessors, the U.S. Supreme Court considered a situation, similar to the one in this case, involving railroad cars in *Central Railroad Co. v. Pennsylvania,* 370 U.S. 607, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962). There the Court held that the cars were subject to tax on their full value in their domiciliary state because there was no evidence of either regular routes through particular nondomiciliary states or a habitual presence in other states on an irregular basis. *Id.* at 615–618, 82 S.Ct. at 1303, 1305; *see also Northwest Airlines, Inc. v. Minnesota,* 322 U.S. 292, 300, 64 S.Ct. 953, 954, 88 L.Ed. 1283 (1944). The Court stated that a domiciliary state has the power to tax property, absent from the state for a portion of the year, which has not acquired an actual situs elsewhere. *Central Railroad,* 370 U.S. at 611–613, 82 S.Ct. at 1301–1302 (and cases cited therein).

■ Taxpayers argue that federal law only allows states to tax property that is physically located in the state. We do not

agree. It is not the property's presence in the taxing jurisdiction that is important, but the taxpayers' activities in the state and their "consequent enjoyment of the opportunities and protections which the state has afforded in connection with those activities." *Commonwealth Edison v. Montana,* 453 U.S. 609, 627, 101 S.Ct. 2946, 2958, 69 L.Ed.2d 884 (1981). In the instant case, many of the vessels and their owners are incorporated in this state. The vessels use port facilities, markets, and navigation aids in this state. Texas provides many services and protections to these vessels and their owners, including the benefits of a trained work force and a civilized society. *See Japan Line,* 441 U.S. at 445, 99 S.Ct. at 1819. What is even more crucial in the instant case is that, for a majority of these vessels, Texas was the only state that provided any benefits and protections to these vessels during the relevant time period.

We note that Section 21.03 is a general provision which allocates to this state only that portion of the value of applicable property that reflects its use in this state without any requirement that the property in question has acquired an actual situs elsewhere or even has been exposed to taxation elsewhere. Section 21.031 is applicable to specific property and provides that this state is not entitled to that portion of the value of applicable property that fairly reflects its use in another state or nation, and goes on to exclude the value of such property in proportion to its use beyond the Gulfward boundary of this state. The waters beyond the Gulfward boundary are not necessarily within the taxing jurisdiction of other states or nations.

Tax Assessors argue that Sections 21.03 and 21.031 are unconstitutional because they partially exempt property from taxation without any showing of sufficient contact with another jurisdiction to establish tax situs so as to require apportionment under federal law. Although taxpayers sought an allocation of the value of their vessels pursuant to Section 21.031, appellants cross-petitioned seeking a declaration that Section 21.031 and Section 21.03 were both unconstitutional. In its judgment, the trial court denied the cross petition and specifically ruled that both provisions were constitutional, and so found in its conclusions of law. Appellants now bring a point of error which expressly challenges the trial court's ruling as to the constitutionality of both provisions.

By its terms, Section 21.03 is a broad provision, generally applicable to "personal property"; thus, taxpayers' vessels surely come within its purview and the constitutionality of this provision is squarely before us. In considering any constitutional challenge to a statute, we must look to the well-settled principles of statutory and constitutional construction. *Duncan v. Gabler,* 147 Tex. 229, 215 S.W.2d 155, 158 (1948). First, the burden is on the party challenging the statute to prove that it is invalid. Second, we must presume that the statute is constitutional, and all doubts as to the statute's validity will be resolved in favor of the legislature. *Id.;* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon Supp. 1986). In fact, a statute will not be struck down unless it is clearly prohibited by a provision of the Constitution or "some superior law." *Duncan,* 215 S.W.2d at 159. Therefore, we are required to construe this statute in such a way that renders it constitutional if reasonably possible, otherwise the Constitution prevails. *Earle v. Program Centers of Grace Union Presbytery,* 670 S.W.2d 777, 779–80 (Tex.App.—Fort Worth 1984, no writ).

■ As Section 21.03 is a grant of a partial tax exemption, it must either be provided for in Article VIII, Section 2 of the Texas Constitution, which it is not, or it must be required by federal law, which it is not. Therefore, because Section 21.03 indiscriminately provides a tax exemption without any requirement of a showing that the property in question has acquired an actual tax situs in another state or nation, it violates Article VIII, Section 2 of the Texas Constitution and is therefore null and void.

As applied in the instant case, Section 21.03 would require an unconstitutional re-

sult. These taxpayers admit that none of their trawlers acquired tax situs in another jurisdiction; however, Section 21.03 unambiguously provides that they are entitled to such an allocation. A statute may not enlarge or restrict organic law. *Kirby Lumber Corp. v. Hardin Independent School District*, 351 S.W.2d 310, 311 (Tex.Civ.App. —Waco 1961, writ ref'd n.r.e.). We have been mindful of our duty to construe Section 21.03 as constitutional if reasonably possible.[5] We have sought guidance from those cases in which courts have been able to reasonably construe statutes to bring them within constitutional bounds: *State v. Shopper's World, Inc.* 380 S.W.2d 107 (Tex.1964); *Earle v. Program Centers*, 670 S.W.2d at 780; *Swearingen v. City of Texarkana*, 596 S.W.2d 157 (Tex.Civ.App.— Texarkana 1979, writ ref'd n.r.e.). We have determined that the omission in this instance is too great to resolve by judicial construction. Appellants' points of error one and two are sustained as to Section 21.03.

It is unnecessary for this Court to determine the constitutionality of Section 21.031 because it is not applicable to these taxpayers' property. *See Texas State Board of Barber Examiners v. Beaumont Barber College, Inc.*, 454 S.W.2d 729, 732 (Tex. 1970); *Wood v. Wood*, 159 Tex. 350, 320 S.W.2d 807, 813 (1959); *Willacy County Appraisal District v. North Alamo Water Supply Corp.*, 676 S.W.2d 632, 641–42 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.).

In the same way that constitutional authorizations to the legislature to exempt property from taxation will be strictly construed, so will legislative acts which provide for those exemptions. It is a well-established rule that statutory tax exemptions are to be given a narrow and strict construction and will not be extended by inference, but must be clearly expressed by the legislature. *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271–72

(Tex.1979); *Davies v. Meyer*, 541 S.W.2d at 829; *Hilltop Village, Inc. v. Kerrville Independent School District*, 426 S.W.2d 943, 948 (Tex.1968); *River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851, 854–55 (Tex.1963); *Willacy County Appraisal District*, 676 S.W.2d at 635–36; *State v. American Legion Post No. 58*, 611 S.W.2d 720, 724 (Tex.Civ.App.—El Paso 1981, no writ); *Aransas Hospital, Inc. v. Aransas Pass Independent School District*, 521 S.W.2d 685, 689 (Tex.Civ.App.— Corpus Christi 1975, writ ref'd n.r.e.); 21 Howell, *Property Taxes* §§ 221, 222 (Texas Practice 2d ed. 1982). Tax exemptions are not favored in that they are contrary to the goal of uniformity of equality in taxation. *Hilltop Village Incorporated*, 426 S.W.2d at 948; *State v. American Legion*, 611 S.W.2d at 723–24. It is the burden of the party claiming the exemption to prove that it comes squarely within the statutory exemption. All doubts are resolved against the exemption. *Bullock v. National Bancshares Corp.*, 584 S.W.2d at 272; *Willacy County Appraisal District*, 676 S.W.2d at 635.

Tax Assessors complain in their third point of error that the trial court erred in entering judgment for the taxpayers in that the judgment was based on the court's conclusion of law that the Gulf shrimp trawlers, owned by the taxpayers, are "vessels or other watercraft" within the meaning of Section 21.031 and, as such, are entitled to an allocation under that provision. Tax Assessors argue that the taxpayers' vessels do not come within the definition. In the State's briefs, the Attorney General brings forth the same argument that the statute does not apply to these vessels and is inoperative in this case, regardless of whether Section 21.031 is constitutional on its face in other fact situations. Section 21.031 provides in part:

(a) If a vessel or other watercraft that is taxable by a taxing unit is used continually outside this state, whether regular-

---

**5.** The State's brief does not address the constitutionality of Section 21.03; but we have considered its arguments for a corrective construc-

tion of Section 21.031 in connection with our consideration of Section 21.03.

ly or irregularly, the appraisal office shall allocate to this state the portion of the total market value of the vessel or watercraft that fairly reflects its use in this state.

\* \* \* \* \* \*

(b)(1) ... For purposes of this section, 'vessel or other watercraft used as an instrumentality of commerce' means a vessel or other watercraft that is primarily employed in the transportation of cargo, passengers, or equipment, and that is economically employed when it is moving from point to point as a means of transportation.

\* \* \* \* \* \*

(2) ... For purposes of this section, 'special-purpose vessel or other watercraft not used as an instrumentality of commerce' means a vessel or other watercraft that:

(A) is designed to be transient and customarily is moved from location to location on a more or less regular basis;

(B) is economically employed when operated in a localized area or in a fixed place; and

(C) is not primarily employed to transport cargo, passengers, and equipment but rather to perform some specialized function or operation not requiring constant movement from point to point.

In this provision, subsection (a) creates a broad partial exemption for vessels or other watercraft used continually outside this state, whether regularly or irregularly. However, subsection (b)(1) and (2) limit the applicability of this provision by narrowly defining what types of vessels are entitled to the allocation (i.e., exemption). To receive the exemption, a vessel must be either an "instrumentality of commerce" or a "special-purpose" vessel.

Appellants argue that the trawlers are not "instrumentalities of commerce" because their primary function is the netting of shrimp, and shrimp cannot realistically be considered "passengers." We agree that these vessels are not "instrumentali-

ties of commerce," and, while shrimp might more easily be considered "cargo,". to define it as either would violate the rule against strict construction of exemption provisions. Shrimp trawlers cannot reasonably be considered as economically employed when they are moving from point to point as a means of transportation. The transporting of shrimp is merely incidental to the trawlers' primary function of netting shrimp.

Likewise, we find that the vessels do not come within the meaning of a "special-purpose vessel or other watercraft." The record reflects that the trawlers' primary use is in the netting of shrimp for commercial sale. The trawlers are itinerant in nature, essentially hunting for shrimp all over the Gulf of Mexico. They are not economically employed when operated in a localized area or in a fixed place, nor are they "primarily employed" to "perform some specialized function or operation not requiring constant movement from point to point." To define these trawlers as "special purpose" vessels within the meaning of Section 21.031(b)(2) would be an improper extension of that exemption provision.

The Code Construction Act, TEX. GOV'T CODE ANN. § 311.023(3) (Vernon Supp. 1986), allows a court, when construing a code provision, to consider the legislative history of that provision in order to ascertain the legislative history of that provision in order to ascertain the legislative intent behind it. The Tex. House Ways and Means Comm., Bill Summary and Explanation, Tex. C.S.H.B. 1748, 68th Leg. (1983), lends support to our construction of the statute. The explanation of C.S.H.B. 1748 states that the first category of vessels, "instruments of commerce," includes "cargo barges, freighters, tankers and other transportation vessels." The "special-purpose" vessel category is stated to include "offshore drilling rigs and work vessels, such as derrick barges, pipe lay barges, etc." Shrimp trawlers are quite dissimilar to any of the vessels specifically delineated by the House Committee which considered this piece of legislation.

Taxpayers argue that to construe this statute as inapplicable to their property would render it unconstitutional, as such a construction would violate TEX. CONST. Art. I, § 3; Art. VIII, § 1; and U.S. CONST. amend. XIV. Article 1, Section 3, of the Texas Constitution and the 14th Amendment to the U.S. Constitution both provide for equal protection of the laws. Article 8, Section 1, of the Texas Constitution specifically mandates that taxation will be equal and uniform. Taxpayers' argument seems to be that to exempt such property as offshore oilwell service vessels from full taxation and not shrimp trawlers would be an unreasonable and unconstitutional discrimination between property similarly situated.

The power to tax is a fundamental power of government. The fact that a statute discriminates in favor of a certain class does not in itself make the statute arbitrary. *Hurt v. Cooper*, 113 S.W.2d 929, 934 (Tex.Civ.App.—Dallas 1938, no writ). The legislature has broad powers in determining classification for purposes of taxation, and courts will not interfere unless there is a clear showing that there is no reasonable basis for the distinction. *American Transfer and Storage v. Bullock*, 525 S.W.2d 918, 924 (Tex.Civ.App.—Austin 1975, writ ref'd). The difference between the subjects taxed need not be great; as long as there is any reasonable distinction between them, it is the duty of this Court to sustain the classification embodied in the statute. *Fairmont Dallas Restaurants, Inc. v. McBeath*, 618 S.W.2d 931, 933 (Tex. Civ.App.—Waco 1981, no writ).

There is no evidence in the record regarding the comparative relationship between Taxpayers' property and offshore oilwell service vessels or any other vessels mentioned in the House Committee's report. Taxpayers only brought forth evidence of the nature and function of their trawlers. Generally, it is presumed that the legislature has not acted unreasonably or arbitrarily, and the party challenging a statute has the burden to establish its unconstitutionality. *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex.1974); *Smith v. Craddick*, 471 S.W.2d 375, 378 (Tex.1971).

There is no evidence in the record regarding such vessels as offshore oilwell service vessels except·that in the House Committee's report. It was stated in *Fairmont Dallas Restaurants, Inc. v. McBeath*, 618 S.W.2d at 933, that mere differences in the method of conducting businesses have long been held sufficient to support the classification of merchants for the purpose of levying occupation taxes. In that case, a restaurant enterprise challenged a statute that provided for a ten percent tax on the gross sale price of mixed drinks sold anywhere except on airlines. The statute was attacked as a denial of the equal protection of the laws and of equal and uniform taxation because it taxed members of the same class differently. The court in that case found that there was evidence that showed real differences between the two businesses as to preserve the constitutionality of the statute in question. *Id.* 618 S.W.2d at 935. *See also Dancetown, U.S.A., Inc. v. State*, 439 S.W.2d 333 (Tex.1969); *Bullock v. Texas Skating Association*, 583 S.W.2d 888 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.); *Bullock v. ABC Interstate Theaters, Inc.*, 557 S.W.2d 337 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.), *cert denied*, 439 U.S. 894, 99 S.Ct. 253, 58 L.Ed.2d 240 (1978). We find that these cases are relevant to the point at issue. *See also City of Pasadena v. Houston Endowment, Inc.*, 438 S.W.2d 152, 157 (Tex.Civ.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.) (annexation ordinance challenged as affecting unequal taxation of property).

■ Obviously, there are vast differences between shrimp trawlers and freighters or offshore oilwell service vessels. About the only thing they all have in common is that they all function on Gulf waters. We hold that there are sufficient differences between these various types of property to provide a reasonable basis for the distinct tax classification created by the Legislature. Therefore, Section 21.031 is

not rendered unconstitutional if it is held to be inapplicable to the property in this case.

In their brief, taxpayers bring forth the argument that appellants are not the proper parties to challenge the constitutionality of Sections 21.03 and 21.031 because appellants have availed themselves of these tax situs rules (as they owe their existence to the Tax Code) and are estopped to complain that these statutes are unconstitutional. They base this argument on the general rule that a court will not entertain a challenge to the constitutionality of a statute by a party who has availed itself of its benefits. *Baker v. Coman,* 109 Tex. 85, 198 S.W. 141, 141 (1917); *Texas Architectural Aggregate, Inc. v. Adams,* 690 S.W.2d 640, 643–44 (Tex.App.—Austin 1985, no writ) (and cases cited therein).

Taxpayers' argument is without merit because this general rule is not applicable against Tax Assessors. First, it was the Taxpayers, not the Tax Assessors, who sought the benefits of the challenged exemption statutes. Second, the Tax Code established the taxing authority in this case and charged it with duties. Public entities such as appellants exist only for the benefit of the polity. We do not consider the Tax Code as providing appellants "benefits" within the meaning of this general rule.

■ We hold that Tax Assessors are the proper parties to challenge the constitutionality of Sections 21.03 and 21.031. To hold otherwise, in reality, would leave no other likely party to challenge unconstitutional exemption statutes. Certainly the taxpayers receiving the exemptions would not be likely to bring such a challenge. We note also that while this general rule does not bar appellants from challenging these statutes, under the cases cited by Taxpayers, it is applicable to bar Taxpayers' constitutional challenge to Section 21.031, should it be held inapplicable to their property.

■ We hold that Section 21.031, on its face, is inapplicable to the vessels owned by Taxpayers. We sustain appellants' third point of error and hold the trial court erred as a matter of law by ruling that

Section 21.031 is applicable to these vessels and in granting the allocation of value pursuant to that provision.

The judgment of the trial court is reversed, and judgment is rendered that: (1) Section 21.03 is unconstitutional on its face, and, therefore, null and void; and (2) that taxpayers are not entitled to an allocation of value pursuant to Section 21.031 of the Tax Code and that the action of appellants in denying such allocation was proper.