**APPRAISAL REVIEW BOARD OF GALVESTON COUNTY, TEXAS and Galveston Central Appraisal District of Galveston County, Texas, Petitioners,**

v.

**TEX–AIR HELICOPTERS, INC., Respondent.**

No. 97–0404

Supreme Court of Texas.

Argued Dec. 3, 1997.

Decided June 5, 1998.

Patrice Pujol, Anthony P. Brown, Kenneth J. Bower, Galveston, for Petitioners.

Jack Holland, Houston, for Respondent.

GONZALEZ, Justice, delivered the opinion of the Court.

The issue in this case is whether Section 21.05 of the Tax Code unconstitutionally exempts from ad valorem taxation helicopters flown from Texas and Louisiana over international waters. In essence, Section 21.05 allows Texas tax authorities to tax only that part of a commercial aircraft's value that fairly reflects the aircraft's use in Texas. TEX. TAX CODE § 21.05(a). The district court rendered summary judgment declaring the statute to be an unconstitutional tax exemption. The court of appeals reversed and remanded for further proceedings. 940 S.W.2d 299. We affirm the court of appeals' judgment because Section 21.05 is constitutional on its face and as applied in this case.

The summary judgment evidence is not disputed. Tex–Air, a Texas corporation, designated Galveston County as the tax situs for five helicopters. No jurisdiction other than the Galveston County tax authorities assessed or taxed the helicopters. Tex–Air maintained and repaired the helicopters in Texas, but used them primarily to fly personnel and supplies to offshore oil and gas platforms and ships in the Gulf of Mexico. In 1993, about ninety percent of the helicopters' flight time was over international waters. During that year, the helicopters combined made 1,004 departures from Texas, 404 of which flew first into Louisiana, and then offshore. Other flights departed directly from Louisiana, and Tex–Air kept one of the helicopters on call in Cameron, Louisiana at all times. The helicopters were always refueled before flight whether departing from Louisiana or Texas.

Appraisers for Galveston County's Appraisal Review Board and Galveston Central Appraisal District assessed the helicopters at full fair market value, $2,841,300, for the 1994 tax year. Tex–Air challenged the appraisal because it did not allocate value as required by Section 21.05. Section 21.05(a) provides:

> If a commercial aircraft that is taxable by a taxing unit is used both in this state and outside this state, the appraisal office shall allocate to this state the portion of the fair market value of the aircraft that fairly reflects its use in this state. The appraisal office shall not allocate to this state the portion of the total market value of the aircraft that fairly reflects its use beyond the boundaries of this state.

TEX. TAX CODE § 21.05(a).

Subsection (b) sets out the formula for determining the fraction of fair market value presumed to be allocable to Texas:

> The allocable portion of the total fair market value of a commercial aircraft that is taxable in this state is presumed to be the fair market value of the aircraft multiplied by a fraction, the numerator of which is the product of 1.5 and the number of revenue departures by the aircraft from Texas during the year preceding the tax year, and the denominator of which is the greater of (1) 8,760, or (2) the numerator.

TEX. TAX CODE § 21.05(b). The statute defines "commercial aircraft" as "an instrumentality of air commerce that is ... primarily engaged in the transportation of cargo, passengers, or equipment for others for consideration." TEX. TAX CODE § 21.05(b).

The tax authorities refused to allocate under Section 21.05. Tex–Air appealed to district court, where the tax authorities and Tex–Air each moved for summary judgment. The district court ruled for the tax authorities, declaring Section 21.05 to violate Article VIII, Section 2 of the Texas Constitution because it grants an unauthorized tax exemption. The court of appeals reversed, holding that Section 21.05 is not an exemption but is merely a statutory method for appraising property. 940 S.W.2d 299.

The tax authorities petition our Court to declare Section 21.05 unconstitutional. However, we will not lightly strike down an act of Legislature. As we recently said:

> In analyzing the constitutionality of a statute, we should, if possible, interpret the statute in a manner that avoids constitutional infirmity. Moreover, if any provision of the statute is held to be invalid, the invalidity does not affect other provisions that can properly be given effect in the absence of the invalid provisions.

*Quick v. City of Austin,* —— S.W.2d ——, —— 1998 WL 236304 (Tex.1998) (citations omitted).

The Galveston County tax authorities do not dispute that the statute by its terms would apply to Tex–Air. Nor do they challenge the reasonableness of the allocation formula under Section 21.05(b). Their sole complaint is that Section 21.05(a) is a tax exemption, unconstitutional under Article VIII, Section 2 of the Texas Constitution. They contend the statute is unconstitutional either on its face or as applied to Tex–Air's helicopters.

Article VIII, Section 2 of the Texas Constitution denies the Legislature the power to grant any tax exemptions the Constitution does not expressly recognize. TEX. CONST. art. VIII, § 2. None of the express constitutional exemptions applies to Tex–Air's helicopters. The tax authorities' position is that they must tax all tangible personal property to the full extent allowable short of violating the United States Constitution, and any statute that directs otherwise is a tax exemption forbidden by the Texas Constitution. The argument requires an understanding of the power to tax granted by the Texas Constitution, as limited by the United States Constitution.

Although the tax authorities challenge the constitutionality of the statute only under Section 2 of Article VIII, their arguments are necessarily premised on the presumption that all property is taxable, a presumption reflected throughout Article VIII. *See, e.g.,* TEX. CONST. art. VIII, § 1(a) ("Taxation shall be equal and uniform.); TEX. CONST. art. VIII, § 1(b) ("All real property and tangible personal property in this State ... shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."); TEX. CONST. art. VIII, § 4 ("The power to tax corporations ... shall not be surrendered or suspended by act of the Legislature...."); TEX. CONST. art. VIII, § 11 ("All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated....").

■ Our Court has interpreted the Texas Constitution to incorporate the common law doctrine expressed by the maxim *mobilia sequuntur personam* ("movables follow the person"), by which personal property would be taxable in full at the domicile of the owner regardless of the actual location. *Guaranty Life Ins. Co. v. City of Austin,* 108 Tex. 209, 190 S.W. 189 (1916). The rule has evolved in Texas to allow taxation of personalty at the domicile of the owner unless (1) tangible personal property has acquired a tax situs of its own away from the domicile, or (2) a statute directs otherwise. *Davis v. City of Austin,* 632 S.W.2d 331, 333 (Tex.1982).

■ The United States Constitution limits Texas' power to tax property which has acquired a tax situs outside of the State. A tax on instrumentalities of commerce raises two constitutional concerns. First, due process requires at least a minimal jurisdictional connection with a state. *Moorman Mfg. Co. v. Bair,* 437 U.S. 267, 272–73, 98 S.Ct. 2340, 57 L.Ed.2d 197 (1978). The due process limitation on taxing instrumentalities of commerce demands that the tax in practical operation bear some relation to opportunities, benefits, or protection conferred or afforded by the taxing state. *Braniff Airways, Inc. v. Nebraska State Bd. of Equalization,* 347 U.S. 590, 600, 74 S.Ct. 757, 98 L.Ed. 967 (1954). The second constitutional issue is whether a tax represents a burden on interstate commerce. The concern here is with the potential for double taxation if every state is free to tax the property at full value. *Id.*

Tex–Air's position has consistently been twofold. It argues first that it established a tax situs in Louisiana and therefore the United States Constitution requires an allocation such as Section 21.05. Alternatively, it argues that the statute is not an exemption because it merely represents an exercise of the Legislature's power to classify property. The court of appeals did not decide the case on either ground, but held that Section 21.05 is merely an exercise by the Legislature of its power to determine the method of valuing property under Article VIII, Section 1(b). We conclude that Tex–Air's first argument is correct. The allocation under Section 21.05 is not an unauthorized exemption but an attempt to comply with United States constitutional mandates. Accordingly, we do not consider whether the Legislature's power to classify or determine methods of valuation alone would support Section 21.05.

The tax authorities contend that the federal constitution does not forbid taxation of instrumentalities of commerce until the taxpayer establishes that the property is burdened with double taxation. They argue that Section 21.05 is unconstitutional on its face because it does not expressly place the burden on the taxpayer to show a taxable situs in another state, relying on the court of appeals case of *Aransas County Appraisal Review Board v. Texas Gulf Coast Shrimp Co.*, 707 S.W.2d 186 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

In *Aransas County*, tax assessors refused to allocate the value of gulf shrimping trawlers. In the resulting litigation the tax assessors argued two allocation statutes were unconstitutional, Section 21.03 of the Texas Tax Code, which broadly applies to any property used outside of the state, and Section 21.031, which applies only to vessels and other water craft. The parties in that case stipulated that the trawlers spent 70% of the time in international waters but did not acquire a taxable situs in another state or nation or were otherwise exposed to taxation in another jurisdiction. *Aransas County*, 707 S.W.2d at 189. The court of appeals did not reach the constitutionality of Section 21.031, the more specific of the statutes, because the court held that the taxpayers did not meet certain statutory definitions. *Aransas County*, 707 S.W.2d at 193–96.

However, the court of appeals held that Section 21.03 was an unconstitutional exemption. *Aransas County*, 707 S.W.2d at 192–94. Section 21.03 broadly requires allocation of any property used outside the state, and allows assessment by Texas appraisers only as reflected by the amount of use within the state. The court of appeals reasoned that if a statute allows property to go untaxed, it is an exemption. *Aransas County*, 707 S.W.2d at 191. It held:

> As Section 21.03 is a grant of a partial tax exemption, it must either be provided for in Article VIII, Section 2 of the Texas Constitution, which it is not, or it must be required by federal law, which it is not. Therefore, because Section 21.03 indiscriminately provides a tax exemption without any requirement of a showing that the

property in question has acquired an actual tax situs in another state or nation, it violates Article VIII, Section 2 of the Texas Constitution and is therefore null and void.

*Aransas County*, 707 S.W.2d at 192. The court held that Section 21.03 was unconstitutional on its face and as applied. *Id.* at 192–93, 196.

The Tax Assessors in this case argue that Section 21.05 is likewise unconstitutional on its face and as applied here because it does not place the burden of proving situs on the taxpayer. However, we disapprove of the court's constitutional analysis of facial invalidity in *Aransas County*. A statute is not facially invalid unless it could not be constitutional under any circumstances. *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 631 (Tex.1996). Section 21.05 could not be an unconstitutional exemption in any case in which the United States Constitution would require fair apportionment. If the facts show that property has a taxable situs in more than one state, the domiciliary state may not tax at full value. *Standard Oil Co. v. Peck*, 342 U.S. 382, 384, 72 S.Ct. 309, 96 L.Ed. 427 (1952). An allocation required under the United States Constitution is not an unauthorized tax exemption. Thus, Section 21.05 is not unconstitutional on its face.

The tax authorities argue alternatively that Section 21.05 is unconstitutional as applied in this case because it allows part of the helicopter's value to go untaxed by any jurisdiction. The tax authorities assert that Tex–Air's admission that it has not paid taxes to another state or nation or otherwise subjected its property for taxation in another jurisdiction conclusively establishes that Section 21.05 is a de facto tax exemption.

However, the United States Constitution forbids a state from taxing more than its fair share of property regardless of whether it actually results in double taxation:

> Since the domiciliary State is precluded from imposing an ad valorem tax on any property to the extent that it *could* be taxed by another State, not merely on such property as *is* subjected to tax elsewhere,

the validity of [the domiciliary state's] tax must be determined by considering whether the facts in the record disclose a possible tax situs in some other jurisdiction. *Central RR Co. v. Pennsylvania,* 370 U.S. 607, 614, 82 S.Ct. 1297, 8 L.Ed.2d 720 (1962) (emphasis in original).

█ The issue of whether property has a tax situs in a particular state is one of due process. *Braniff Airways, Inc.,* 347 U.S. at 599, 74 S.Ct. 757. Instrumentalities of commerce have a taxable situs in a state if the facts of the case show the property has "a degree of permanency to distinguish it from property which is in the state on a purely temporary or transitory basis." *Greyhound Lines Inc. v. Board of Equalization,* 419 S.W.2d 345, 349 (Tex.1967). In *Braniff* the Court determined that a non-domiciled airline had a taxable situs in Nebraska. The Court observed that the airline made eighteen stops in Nebraska where it rented facilities and purchased fuel, and that Nebraska gave the airline protection during stops and an opportunity to exploit commerce, traffic and trade originating in the State.

█ The summary judgment facts in this case show that the helicopters have a substantial connection with the State of Louisiana. Tex–Air enjoys the same benefits and privileges from Louisiana as it does from Texas, the difference being one of degree, not kind. About a third of flights originating in Texas fly first to Louisiana. Helicopters always refuel before flying offshore, whether the flight begins in Texas or from Tex–Air's facility in Cameron, Louisiana. One of the helicopters on call was always stationed in Cameron, Louisiana.

These facts establish that the helicopters have a taxable situs in Louisiana, and federal constitutional law forbids Texas to tax them without apportionment. *See Central RR,* 370 U.S. at 614–15, 82 S.Ct. 1297 (1962); *Standard Oil,* 342 U.S. at 384, 72 S.Ct. 309. Thus, the allocation under Section 21.05 is not an unauthorized exemption but an attempt to comply with United States constitutional mandates. The tax authorities make no other constitutional challenge, and have failed to show that Section 21.05 is unconstitutional either on its face or as applied. Ac-

cordingly, we affirm the judgment of the court of appeals.