No. 04-00-00320-CV


FIRST AIRCRAFT LEASING, LTD.,

Appellant


v.


BEXAR APPRAISAL DISTRICT,

Appellee


From the 166th Judicial District Court, Bexar County, Texas

Trial Court No. 96-CI-13405

Honorable Robert L. Eschenberg, II, Judge Presiding


Opinion by: Tom Rickhoff, Justice

 

Sitting: Tom Rickhoff, Justice

 Catherine Stone, Justice

 Sarah B. Duncan, Justice


Delivered and Filed: January 24, 2001


REVERSED AND REMANDED



 This is an appeal from a judgment in favor of appellee, Bexar Appraisal District ("BAD"), in
which the trial court determined that an aircraft owned by appellant, First Aircraft Leasing, Ltd.
("First Aircraft"), was subject to ad valorem taxation in Bexar County, Texas, for the 1996 tax year.

The threshold issue in this appeal is whether the trial court erred by not applying Texas Tax Code
section 21.05 to the aircraft. Because we hold that the aircraft falls within the scope of Section
21.05, we reverse and remand.

BACKGROUND

 The parties stipulated to the following facts. First Aircraft's principal place of business is
located in San Antonio, Bexar County, Texas. First Aircraft, which is not a "certified air carrier," (1)
owns and leases a Fairchild SA227-AC (Metro III) aircraft. From February 1992 to March 1995,
First Aircraft leased the Metro III to Conquest Airlines Corp., which is a "certified air carrier." From
June 1995 to September 1995, First Aircraft leased the Metro III to Peninsula Airways, Inc., which
is a "certified air carrier." From September 27, 1995 to December 24, 1996, the Metro III was
"between leases," and in storage being repaired, inspected, and maintained. During this time period,
the aircraft was held by First Aircraft and available for lease.

 From September 1995 to May 1996, the Metro III was physically located at San Antonio
International Airport. From May 1996 to December 20, 1996, the aircraft was located in San
Marcos, Texas. In December 1996, First Aircraft leased the Metro III to Merlin Express, Inc., which
is a "certified air carrier." On December 20, 1996, the aircraft was returned to San Antonio
International Airport, where it was maintained until Merlin Express relocated the aircraft on April 4,
1997. Although the lease was executed in December 1996, Merlin Express did not place the aircraft
into service until April 1997.

 At no time between September 27, 1995 and April 4, 1997 did the Metro III leave Texas
airspace. No other taxing jurisdiction of any state other than Texas has sought to impose a property
tax on the Metro III and no foreign country has attempted to tax the aircraft for 1996. The parties
agreed that if the aircraft was taxable in Texas for the 1996 tax year, it was taxable in Bexar County.

 The trial court determined the Metro III was subject to ad valorem taxation in Bexar County,
Texas, for the 1996 tax year. (2) This appeal by First Aircraft ensued.

WHEN AN AIRCRAFT IS A "COMMERCIAL AIRCRAFT"

 First Aircraft argues that the Metro III was not subject to taxation by BAD on January 1,
1996 because it was eligible for an exemption under Section 21.05(c) and the aircraft was a
"commercial aircraft" as defined in Section 21.05(e). BAD counters that the Metro III was subject
to taxation on January 1, 1996 because it was not a "commercial aircraft" on that date and the aircraft
did not constitute an instrumentality of interstate commerce on that date. 

 BAD's argument relies on Tax Code sections 11.42(a), (3) 21.01, (4) and 21.02(a) (5) for the
proposition that a snapshot must be taken on a single day (January 1) and the aircraft's status on that
date alone determines whether Section 21.05 applies. This argument is contrary to the rules of
statutory construction (6) and the clear language of the Tax Code.

 Chapter 11 of the Tax Code specifies when Texas has jurisdiction to tax real and personal
property, and contains certain exemptions from taxation. Under Section 11.01, all tangible personal
property that Texas has jurisdiction to tax is taxable unless exempt by law. Tex. Prop. Tax Code
Ann. § 11.01(a) (Vernon 1992). Texas has jurisdiction to tax tangible personal property if the
property is (1) located in Texas for longer than a temporary period; (2) temporarily located outside
Texas and the owner resides in Texas; or (3) used continually, whether regularly or irregularly, in
Texas. Id. § 11.01(c). Tangible personal property that is operated or located exclusively outside
Texas during the year preceding the tax year and on January 1 of the tax year is not taxable in Texas.
Id. § 11.01(d). 

 Chapter 21 contains various appraisal and assessment provisions and methods by which the
taxable situs of property is determined. Tangible personal property is taxable by a particular taxing
unit, such as BAD, if (1) it is located in the unit on January 1 for more than a temporary period;

 (2) it normally is located in the unit, even though it is outside the unit on
January 1, if it is outside the unit only temporarily;

 (3) it normally is returned to the unit between uses elsewhere and is not
located in any one place for more than a temporary period; or

 (4) the owner resides (for property not used for business purposes) or
maintains his principal place of business in this state (for property used for business
purposes) in the unit and the property is taxable in this state but does not have a
taxable situs pursuant to Subdivisions (1) through (3) of this section.


Id. § 21.02(a). 

 We conclude that Sections 11.01(c) and 21.02(a) provide, as a general rule, that jurisdiction
to tax exists based on the length of time property is located in the taxing unit within Texas. See Pratt
& Whitney Canada, Inc. v. McLennan County Appraisal Dist., 927 S.W.2d 641, 643 (Tex.
App.--Waco 1996, writ denied) (the corollary to Section 11.01(c)(1) is that, if property is not
located in the state for "longer than a temporary period," the state does not have jurisdiction to tax).
An exception to Section 21.02 is found in Section 21.05. Id. § 21.02(a). Section 21.05 provides the
method by which assessment and situs are determined for "commercial aircraft." "Commercial
aircraft" are taxable to the extent provided in Section 21.05(a) (7) and (b). (8) The taxable situs of a
"commercial aircraft" is determined under Section 21.05(c) (9) and (d). (10)

 We interpret Section 21.05 as raising two questions. First, is the aircraft a "commercial
aircraft" as defined in subsection (e). (11)
 Second, is the aircraft located in Texas for "longer than a
temporary period" as determined under subsection (c). The answer to the first question is determined
by examining the use made of the aircraft. 

 BAD's snap-shot argument would take an aircraft out of Section 21.05's scope if the
company that owned the aircraft leased it to a certified air carrier every day of the year, except on
January 1. This is an absurd result not contemplated by the legislature. Instead, we agree with First
Aircraft that an aircraft's status as "commercial" is determined by looking back in time to the
aircraft's use in the year preceding January 1 of the applicable tax year. Determining the status of
personal property based on the property's use over the preceding tax year is consistent with Chapter
21, which provides methods of appraisal, assessment, and allocation that take into consideration the
use of the subject property. See Tex. Prop. Tax Code Ann. § 21.021 et seq. (12) This is also
consistent with Section 21.05 as read in its entirety. (13) Section 21.05(b) provides that "[t]he allocable
portion of the total fair market value of a commercial aircraft that is taxable in this state is presumed
to be the fair market value of the aircraft multiplied by a fraction, the numerator of which is the
product of 1.5 and the number of revenue departures by the aircraft from Texas during the year
preceding the tax year . . . ." Id. § 21.05(b) (emphasis added). 

 If the allocable fair market value of an aircraft is determined by its use over the preceding tax
year for purposes of subsection (b), then the aircraft's character as "commercial" must be determined
by its use over the preceding tax year for purposes of subsection (e). Therefore, if an aircraft, during
the year preceding the applicable tax year, was primarily engaged in the transportation of cargo,
passengers, or equipment for others for consideration; was economically employed when it was
moving from point to point as a means of transportation; and was operated (14) by a certificated air
carrier, then the aircraft qualifies as a "commercial aircraft."

 The parties stipulated that the Metro III was "between leases" from September 27, 1995 to
December 24, 1996, and was held by First Aircraft as available for lease during that time. The parties
also stipulated that while the aircraft was "between leases" and/or not being actively flown, it was in
storage, subject to various repairs, inspections, and periodic maintenance. The aircraft's storage
during this time period does not disqualify it from being characterized as "commercial" to the extent
the aircraft qualifies as "commercial" under Section 21.05(e) during the period of January 1, 1995
to September 26, 1995.


CONSTITUTIONALITY OF SECTION 21.05

 BAD asserts that applying Section 21.05(c) to the Metro III would violate article VIII,
sections 1 and 2, of the Texas Constitution because it would exempt property without a constitutional
basis. BAD's argument begins with the premise that such a holding would transform Section 21.05
into an exemption statute. BAD asserts, and First Aircraft does not dispute, that no other jurisdiction
has imposed a tax on the Metro III for 1996 and it is unlikely any other state has a sufficient nexus
with the aircraft to acquire a taxable situs for 1996. BAD contends Texas has jurisdiction to tax the
Metro III based on First Aircraft's corporate domicile and the physical location of the aircraft on
January 1, 1996. BAD concludes that there is no overriding federal principle that dictates the Metro
III be exempt from taxation. A similar argument was rejected by the Texas Supreme Court in
Appraisal Review Board of Galveston County v. Tex-Air Helicopters, Inc., 970 S.W.2d 530 (Tex.
1998). 

 In Tex-Air, the Texas taxing authorities refused to allocate the fair market value of helicopters
used to transport personnel and supplies to offshore oil and gas platforms and ships in the Gulf of
Mexico. The taxing authorities argued that Section 21.05 was unconstitutional as applied because
it allowed part of the helicopters' value to go untaxed by any jurisdiction. Id. at 532. The taxing
authorities asserted that Tex-Air's admission that it had not paid taxes to another state or nation or
otherwise subjected its property for taxation in another jurisdiction conclusively established that
Section 21.05 was a de facto tax exemption. Tex-Air asserted that it had established a tax situs in
Louisiana and therefore the United States Constitution required an allocation such as provided by
Section 21.05(a). 

 The Supreme Court rejected the taxing authorities' argument, noting that the United States
Constitution forbids a state from taxing more than its fair share of property regardless of whether it
actually results in double taxation. Id. at 534. "'Since the domiciliary State is precluded from
imposing an ad valorem tax on any property to the extent that it could be taxed by another State, not
merely on such property as is subjected to tax elsewhere, the validity of [the domiciliary state's] tax
must be determined by considering whether the facts in the record disclose a possible tax situs in
some other jurisdiction."' Id. at 534-35 (citing Central RR Co. v. Pennsylvania, 370 U.S. 607, 614,
82 S. Ct. 1297 (1962)) (emphasis in original).

 The Supreme Court observed that it had interpreted the Texas Constitution to incorporate
the common law doctrine expressed by the maxim mobilia sequuntur personam ("movables follow
the person"), by which personal property is taxable in full at the domicile of the owner regardless of
the property's actual location. Id. at 533. The Court noted that this rule had evolved in Texas to
allow taxation of personalty at the domicile of the owner unless (1) tangible personal property has
acquired a tax situs of its own away from the domicile, or (2) a statute directs otherwise. Id. The
Court concluded that the allocation under Section 21.05(a) was not an unauthorized exemption but
an attempt to comply with United States constitutional mandates. Id. The Supreme Court discussed
those mandates as follows:

 The United States Constitution limits Texas' power to tax property which has
acquired a tax situs outside of the State. A tax on instrumentalities of commerce
raises two constitutional concerns. First, due process requires at least a minimal
jurisdictional connection with a state. The due process limitation on taxing
instrumentalities of commerce demands that the tax in practical operation bear some
relation to opportunities, benefits, or protection conferred or afforded by the taxing
state. The second constitutional issue is whether a tax represents a burden on
interstate commerce. The concern here is with the potential for double taxation if
every state is free to tax the property at full value.


Id. at 533 (citations omitted). 

 Although the issue in Tex-Air was whether Section 21.05(a) was an exemption, and here the
issue, as phrased by BAD, is whether Section 21.05(c) is an exemption, we find the reasoning in Tex-Air instructive. Read as a whole, Section 21.05 does not provide for an exemption. Instead,
subsections (a) and (b) provide the method for allocating to Texas the portion of a commercial
aircraft's fair market value that fairly reflects its use in Texas. Tex-Air, 970 S.W.2d at 532; Tex.
Prop. Tax Code Ann. § 21.05(a), (b). Subsections (c) and (d) provide the method for determining
the aircraft's taxable situs. Id. § 21.05(c), (d). None of these subsections, read separately or
together, results in an unconstitutional exemption. BAD has not met its burden of showing that
Section 21.05, as applied to the Metro III, is unconstitutional.


CONCLUSION

 We hold that BAD may tax the Metro III for the 1996 tax year to the extent allowed by the
provisions of Tax Code section 21.05, if First Aircraft establishes that the aircraft was used as a
"commercial aircraft" in 1995. We reverse the trial court's judgment and remand for further
proceedings consistent with this opinion.


 Tom Rickhoff, Justice

PUBLISH
1. A "certified air carrier" is "one engaged in interstate or intrastate commerce under authority of the U.S.
Department of Transportation." Tex. Prop. Tax Code Ann. § 21.05(e)(3) (Vernon 1992).
2. The trial court also determined the aircraft was not subject to ad valorem taxation in Bexar County, Texas,
for the tax year 1997. BAD does not appeal this determination.
3. Eligibility for and the amount of an exemption available under Chapter 11 of the Tax Code for any tax year
are determined by a claimant's qualifications on January 1. Tex. Prop. Tax Code Ann. § 11.42(a) (Vernon Supp.
2000).
4. With one exception not applicable here, "[r]eal property is taxable by a taxing unit if located in the unit on
January 1." Id. § 21.01.
5. With certain exceptions, "tangible personal property is taxable by a taxing unit if . . . it is located in the
unit on January 1 for more than a temporary period . . . ." Id. § 21.02(a)(1).
6. Our obligation to enforce the plain language does not authorize us to employ a "bloodless literalism in which
text is viewed as if it had no context." West Anderson Plaza v. Feyznia, 876 S.W.2d 528, 532 (Tex. App.--Austin
1994, no writ). Instead, we must consider the context and the consequences that would follow from a particular
interpretation. Sharp v. House of Lloyd, Inc., 815 S.W.2d 245, 249 (Tex. 1991). We must avoid interpretations that
would produce absurd results or render other language mere surplusage. City of Amarillo v. Martin, 971 S.W.2d 426,
430 (Tex. 1998); Sharp, 815 S.W.2d at 249.
7. "If a commercial aircraft that is taxable by a taxing unit is used both in this state and outside this state, the
appraisal office shall allocate to this state the portion of the fair market value of the aircraft that fairly reflects its use
in this state. The appraisal office shall not allocate to this state the portion of the total market value of the aircraft that
fairly reflects its use beyond the boundaries of this state." Tex. Prop. Tax Code Ann. § 21.05(a).
8. "The allocable portion of the total fair market value of a commercial aircraft that is taxable in this state is
presumed to be the fair market value of the aircraft multiplied by a fraction, the numerator of which is the product of
1.5 and the number of revenue departures by the aircraft from Texas during the year preceding the tax year, and the
denominator of which is the greater of (1) 8,760, or (2) the numerator.
" Id. at § 21.05(b).
9. "During the time in which any commercial aircraft is removed from air transportation service for repair,
storage, or inspection, such aircraft is presumed to be in interstate, international, or foreign commerce and not located
in this state for longer than a temporary period for purposes of Section 11.01 of this code." Id. at § 21.05(c).
10. "A certificated air carrier shall designate the tax situs of commercial aircraft that land in Texas as either
the carrier's principal office in Texas or that Texas airport from which the carrier has the highest number of Texas
departures." Id. at § 21.05(d).
11. "For purposes of this subchapter, a commercial aircraft shall mean an instrumentality of air commerce that
is: (1) primarily engaged in the transportation of cargo, passengers, or equipment for others for consideration; (2)
economically employed when it is moving from point to point as a means of transportation; and (3) operated by a
certificated air carrier. A certificated air carrier is one engaged in interstate or intrastate commerce under authority
of the U.S. Department of Transportation." Id. § 21.05(e).

12. See id. §§ 21.021 (taxation based on use of vessels and other watercraft); 21.03 (allocation of total market
value of personal property used continually outside of Texas); 21.031 (allocation of taxable value of vessels and other
watercraft used outside Texas); 21.04 (allocation of total market value of railroad rolling stock); 21.05 (taxation and
allocation of commercial aircraft based on use); 21.06 (taxation of intangible personal property based on residence of
owner and use); 21.07 ( taxation of intangibles of certain transportation businesses); and 21.08 (determination of situs
of intangibles of certain financial institutions).
13. In construing a statute, we must attempt to give effect to every word and phrase if it is reasonable to do so.
See City of Amarillo v. Martin, 971 S.W.2d 426, 430 (Tex. 1998); see also Tex. Gov't Code Ann. § 311.021(2)
(Vernon 1998) (stating that in enacting a statute, it is presumed that the entire statute is intended to be effective).
14. We note that the legislature designated "commercial aircraft" as those "operated" by certified air carriers.
If the legislature had intended Section 21.05 to apply only to aircraft owned by certified air carriers, it would have used
the word "owned" rather than the word "operated" in subsection (e)(3). The choice of the word "operated" instead of
"owned" indicates the legislative intent that Section 21.05 apply to entities, such as First Aircraft, which own aircraft
that they in turn lease to certified air carriers.