DEVON ENERGY V. HOCKLEY COUNTY



NO. 07-04-0005-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



NOVEMBER 3, 2005


______________________________



DEVON ENERGY PRODUCTION, L.P., and


PENNZENERGY EXPLORATION and PRODUCTION, L.L.C.



 Appellants


v.



HOCKLEY COUNTY APPRAISAL DISTRICT, 



 Appellee

_________________________________



FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;



NO. 00-01-17,897; HON. HAROLD PHELAN, PRESIDING


_______________________________



OPINION


_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

 Devon Energy Production Company, L.P. and PennzEnergy Exploration and
Production, L.L.C. (collectively referred to as Devon) appeal from a judgment denying them
relief against the Hockley County Appraisal District (Hockley District). (1) Devon sued the
Hockley District contending that the latter's appraisal of the former's working interest in an
oil and gas reservoir was excessive and that it included within its appraisal property outside
county boundaries. Because of these purported errors, the Hockley District's appraisals
over the years were void or otherwise unenforceable, Devon concluded. Trial was had,
and judgment was entered denying Devon relief. The two issues before us concern the
valuation of minerals by the Hockley District for ad valorem taxation and the trial court's
refusal to award Devon attorney's fees. We reverse the judgment of the trial court.

Background


 Devon owned a working interest in an oil and gas lease, the M. G. Gordon, covering
approximately 731 surface acres of land. Approximately 84% of the surface acreage (or
612.7 acres) lay in Hockley County, while 16% (or 118.3 acres) lay in Terry County. 
Furthermore, minerals were being produced from a reservoir encompassed by the lease
and known as the Clearfork formation. The latter also crossed the Terry and Hockley
County lines.

 As previously mentioned, the dispute before us arose when the Hockley District
attempted to value the minerals for purposes of ad valorem taxation. It did so by first
valuing the entire Clearfork reserve included in the M.G. Gordon lease, irrespective of the
county in which it lay. Next, it calculated the percentage of surface acres in the lease
which were located within the boundaries of Hockley County. That percentage (84%) was
then multiplied by the entire value of the Clearfork reserve previously derived, and the
resulting sum purported to form the fair market value of the property upon which Devon's
ad valorem tax liability was based.

 Devon questioned the manner of appraisal for, among other reasons, the calculation
allegedly encompassed property outside county borders. That is, the evidence revealed
that the boundaries of the Clearfork formation were not co-terminous with those of the M.G.
Gordon lease. The former covered a smaller area than did the latter. More importantly,
about 50% of the reserve actually was located in both Hockley and Terry Counties. Given
this, the Hockley District could assess only 50% of the reservoir for tax purposes, so Devon
argued. 

 The record further disclosed that the Terry County Appraisal District (Terry District) 
also valued the Clearfork reservoir for ad valorem taxation. It too calculated the fair market
value of the entire Clearfork mineral interest in dispute. But, because only 50% of the
formation lay within the boundaries of Terry County, it only assessed 50% of the whole for
tax purposes.

 So too does the record illustrate that upon combining the assessments derived by
the Hockley District with that of the Terry District, the mineral formation at issue was
effectively valued (for tax purposes) at 134% of its fair market value. Indeed, the Hockley
District so stipulated. (2) And, according to Devon, such an excessive valuation was
prohibited by the Texas Constitution.

 Issue One - Validity of Assessment

 Devon initially challenges the assessment of the Hockley District by arguing that it
fails to pass constitutional muster and because it included property outside Hockley
County. We sustain the latter argument, and since it is dispositive of the appeal, we need
not consider the former. 

 

 Applicable Law

 The Texas Constitution provides:

 No property of any kind in this State shall ever be assessed for ad valorem
taxes at a greater value than its fair cash market value nor shall the Board
of Equalization of any governmental or political subdivision or taxing district
within this State fix the value of any property for tax purposes at more than
its fair cash market value . . . .


Tex. Const. art. VIII, §20. Article VIII, § 11 of the same document further specifies that
"[a]ll property, whether owned by persons or corporations shall be assessed for taxation,
and the taxes paid in the county where situated . . . ." Id. art. VIII, § 11. 

 Next, to perform the duties of assessing property for ad valorem taxation, the
legislature created appraisal districts. Each county has one, Tex. Tax Code Ann. §6.01(a)
(Vernon 2001), and its boundaries generally are co-terminous with those of the county. (3) 
Id. §6.02(a). So too is each district statutorily charged with the responsibility of "appraising
property in the district for ad valorem tax purposes of each taxing unit that imposes ad
valorem taxes on property in the district." Id. §6.01(b). Statute further dictates that "[r]eal
property is taxable by a taxing unit if located in the unit on January 1 . . .," id. §21.01, and
the burden lies with the unit to prove situs. Oake v. Collin County, 692 S.W.2d 454, 455
(Tex. 1985) (holding that "a taxing authority must prove its entitlement to collect taxes by
showing that the property it seeks to assess has a taxable situs within the limits of its
boundaries"). 

 From the aforementioned statutes, one encounters a truism applicable to this case. 
It pertains to the situs of the property undergoing assessment and holds that the appraisal
district may assess for taxation only that property within its district. Indeed, if 1) a district's
boundaries are co-terminous with those of the county and 2) a district is responsible for
assessing property within the district, then one must logically conclude that its assessment
cannot include property outside the county. (4) 

 Application of Law

 The property undergoing appraisal here by the Hockley District consists of minerals
beneath a particular tract of land. Yet, the borders of the zone wherein the minerals lay
are not co-terminous with those of the surface acres comprising the M.G. Gordon lease. 
Much like the chocolate in a marble cake, the minerals lay in specific areas within the
whole. So too does the formation in which they are found traverse county lines. Given
this, the Hockley District was prohibited from including within its assessment property
laying outside Hockley County borders. Yet, the appraisal methodology utilized to
determine the fair market value of the Clearfork reservoir within Hockley County did not
comport with this restriction. 

 Instead of using the geographic borders of the Clearfork reservoir as determinative,
it adopted the surface acreage encompassed in the Gordon lease and within Hockley
County as the relevant yardstick. Yet, no one disputes that the surface acreage and the
sub-surface acreage containing the minerals were not the same here. Nor does anyone
deny that 84% of the surface acreage had a situs in Hockley County while only 50% of the
Clearfork reservoir lay within that county. So, as can be readily seen, the size of one was
not the true measure of the other. And, when the greater was used as the measure of the
smaller, than the difference had to come from somewhere. Logic permits us only to
conclude that here, the difference came from that portion of the reservoir located within
Terry County. Simply put, the Hockley District effectively incorporated 34% of the
formation located in Terry County into its assessment. 

 In sum, if only 50% of the mineral formation being taxed lay within Hockley County,
then the taxing units for whom the Hockley District valued the property could only tax 50%
of the formation. And, because they could only tax 50% of the formation, the Hockley
District could only assess 50% of the formation for tax purposes. Any creative appraisal
methodology that ignored this limitation was and remains unacceptable. To paraphrase
the words of Pink Floyd in its song "Money," appraisal districts assessing property crossing
county lines are entitled to "share it fairly but don't take a slice of [the other's] pie." 
Moreover, that it may be difficult to accurately determine the actual size and location of the
underground property is no reason to ignore restrictions imposed by law. After all, the
taxing unit seeking to tax the property has the burden to establish that the realty lay within
the unit's border. Oake v. Collin County, supra. If it cannot, then it cannot lawfully tax the
realty. And, if it cannot lawfully tax the realty, then the appraisal district has no authority
to incorporate the realty into its assessment. (5) Thus, we sustain the issue.

 Issue Two - Attorney's Fees

 Through its remaining issue, Devon contends that the trial court erred in failing to
award it attorney's fees. The trial court did not consider awarding Devon attorney's fees
because it was not a prevailing party. This is no longer true, given our opinion in this
cause. Therefore, we also remand this topic for reconsideration by the trial court. See
Tex-Air Helicopters, Inc. v. Appraisal Review Board of Galveston County, 940 S.W.2d 299,
304 (Tex. App.-Houston [14th Dist.] 1997), aff'd, 970 S.W.2d 530 (Tex. 1998) (refusing to
award attorney's fees under the Tax Code because the trial court mistakenly held that the
claimant was not a prevailing party and had yet to have the opportunity to reconsider the
issue once it was determined that the claimant was actually a prevailing party). 

 The Hockley District having assessed the value of the realty at issue in violation of
the law, we reverse the judgment of the trial court and remand the cause.


 Brian Quinn

 Chief Justice
1. Devon's predecessor-in-interest was PennzEnergy. 
2. The stipulation read: "The different appraisal methodologies used by Hockley County Appraisal
District and the Terry County Appraisal District result in the appraisal of Plaintiff's property at approximately
one hundred thirty-four percent (134%) of its market value." 
3. To the extent that exceptions to this rule exist, no one argues that such exceptions were in play here.
4. We acknowledge that the boundaries of one appraisal district may extend into those of another if a
taxing unit covered by the district itself has boundaries laying in two or more counties. Tex. Tax Code Ann.
§ 6.02(b) (Vernon 2001). Yet, again, no one argues that the facts of record permit application of §6.02(b). 

5. No one argues that the property rights accompanying the use of the surface (e.g. right to enter the
land and explore) were included in the valuation of the property at issue. Indeed, while the language used by
the appraisers to describe what they were valuing differed, all began by determining a value for the remaining
recoverable reserves calculated through a discounted cash flow analysis. Consequently, our holding is
restricted to the facts before us. Finally, the mode of valuing properties such as those involved at bar may
be a matter ripe for legislative attention.